COMMONWEALTH *vs.* WILLIAM COTTER.

Middlesex. January 5, 1993. - May 10, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Contempt. Practice, Criminal,* Argument by prosecutor, Sentence, Probation.

A criminal defendant's claim that the prosecutor's closing argument contained improper, prejudicial statements was without merit. [184-185]
A criminal defendant who, at sentencing on his convictions of criminal contempt, would not agree to refrain from engaging in certain unlawful activities as a condition of his probation was properly sentenced to a term of incarceration. [185-188] NOLAN, J., dissenting, with whom LYNCH & O'CONNOR, JJ., joined.

INDICTMENTS found and returned in the Superior Court Department on October 12, 1990.

A motion to dismiss was heard by *Elizabeth J. Dolan,* J., and the cases were tried before *Robert H. Bohn, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Cornelius J. Sullivan* (*Brenda E. W. Sullivan* with him) for the defendant.

*Elisabeth J. Medvedow,* Assistant Attorney General, for the Commonwealth.

WILKINS, J. A Middlesex County jury found the defendant guilty of criminal contempt of a preliminary injunction based on his conduct on August 10 and 23, 1991, at a facility in Brookline in Norfolk County that provides abortion counselling and services. We transferred the defendant's appeal to this court. We affirm the convictions.

The order of which the defendant was found in contempt is the same May 21, 1990, preliminary injunction issued in the Superior Court in Middlesex County that was involved in

*Commonwealth* v. *Brogan, ante* 169 (1993), decided this day. This defendant, who was named in the preliminary injunction, argues the same three issues that we considered in the *Brogan* case. Each is disposed of by what we said there. Our conclusions on each of these issues are: (1) the trial of the contempt indictment in Cambridge did not violate the defendant's rights; (2) the judge properly excluded the defense of necessity from the case; and (3) the judge's jury instruction concerning the language in the preliminary injunction did not improperly take an issue from the jury. [1]

The defendant argues two issues that were not presented in the *Brogan* case. He challenges as prejudicial certain remarks made in the prosecutor's closing argument and which, he asserts, violated his rights under the First Amendment to the United States Constitution. He also challenges the lawfulness of the concurrent sentences that the judge imposed after the defendant refused to accept, as a condition of the suspension of a portion of the sentences initially announced, a prohibition for three years against his "participation in any unlawful activities of Operation Rescue Boston or any other such similar group."

1. The defendant's claim that the prosecutor's closing argument contained improper, prejudicial statements is meritless. He objects only to two statements. Each was proper argument. One concerned the prosecutor's statement that locks had been placed on the back door of the Brookline facility on August 23. This fact was in evidence, and the prosecutor did not misuse it in argument. Second, the prosecutor referred to the defendant's possible leadership role in the August 23 protest. The existence of this role was a reasonable inference from the facts, and thus it was permissible to suggest it. Moreover, the defendant did not object to either of the prosecutor's statements, although he did object to "going into the

---

[1]In fact, on two of these issues the defendant's position is weaker than that of Brogan. This defendant did not testify, as Brogan did, and he did not otherwise seek to present evidence bearing on the defense of necessity. This defendant also did not object to the jury instruction that he now challenges.

issue of a conspiracy and vandalism." Neither challenged statement of the prosecutor mentioned conspiracy or vandalism. Moreover, the defendant points out that, in his view, the judge attempted a curative instruction, but that it could not cure the prosecutor's errors. In sum, the defendant now objects to portions of the prosecutor's closing argument that were in fact proper argument, to which he did not object at trial, and which, according to him, were the subject of a curative instruction. There was no error.

2. The defendant's challenge to the sentences that the judge imposed presents a more substantial issue. To permit an understanding of the challenge, we must set forth in detail what happened in the fixing of the defendant's sentences. After hearing argument from counsel, the judge noted that the defendant "has been arrested on twenty prior occasions beginning in August of 1985. His offenses have included: violations of the trespassing laws, disturbing the peace, violations of the Civil Rights law, and violation of this Court's order of May, 1990." The judge observed that the defendant had "been convicted on eight prior occasions of eight different offenses; three of those matters have been continued without a finding; three of those matters have been dismissed; two of those matters are still pending in Springfield." The defendant had had one prior commitment of three days in Massachusetts.

We now quote from the transcript, omitting certain unnecessary sections:

THE JUDGE: ". . . I have fashioned what I hope and think and believe is a sentence that fits this offender and that fits the offense. And that is a sentence of two and a half years in the House of Correction, one year to serve, the balance suspended for a period of three years. As a condition of that suspended sentence, during that three-year period of time, Mr. Cotter is to have no participation in any unlawful activities of Operation Rescue Boston or any other such similar group.

"So the clerk will read the sentence, please."

THE CLERK: ". . . [T]he Court having duly considered your offenses . . . orders you punished by confinement at the House of Correction at Billerica for terms of two and a half years, one year of this sentence is to be served, the balance is hereby suspended for a period of three years.

"It is further ordered by the Court that you be placed on probation for a period of three years, that you keep the peace and be of good behavior for a period of three years following · your release from incarceration.

"Do you so recognize, understand and agree in open court?"

THE DEFENDANT: "As you define the terms."

THE CLERK: "So far, do you agree with what I said so far?"

THE DEFENDANT: "Yes. Do you mean I will not participate in further rescues?"

THE CLERK: "I haven't said that yet."

THE DEFENDANT: "All right."

. . .

THE CLERK: "It is further ordered by the Court that a condition of the suspended portion of the sentence is that you not participate in any unlawful activities of Operation Rescue or any other such similar organizations.

"Do you so recognize, understand, and agree to those terms, sir?"

THE DEFENDANT: "No, I do not."

THE CLERK: "Defendant will not recognize those conditions, Your Honor."

THE JUDGE: "Well, the sentence then is two and a half years in the House of Correction."

Then addressing defense counsel, the judge stated, "[I]f [the defendant] cannot recognize the terms of the suspended portion of the sentence, then I feel obliged to impose the entire sentence, two and a half years in the House of Correction. This is a choice made by your client.

"There was in my sentence a component which involved incarceration and a component which involved community supervision. In my mind, that's a constructive sentence, a

creative sentence, a sentence that is probably fitting in most situations. But the defendant has to accept the community supervision component of the sentence or it doesn't work. So the judge is then left with nothing but the committed component of the sentence, and that's what we'll impose.

". . . And I understand [the defendant's] social commitment, and I understand his commitment of conscience. And I don't want to disagree with that at all. I'm simply saying that if he cannot accept my terms of the suspended portion of the sentence, then that will not be part of the sentence."

DEFENDANT'S COUNSEL: "Your Honor, if I may, just two minutes to speak to Mr. Cotter."

THE JUDGE: "Yes, absolutely."

After conferring with his client, defense counsel told the judge that the defendant would not accept the conditions of probation. The judge then imposed a concurrent two and one-half year sentence to the house of correction for each conviction.

The only aspect of the defendant's challenge to the lawfulness of his sentence that presents a question of substance is his claim that the sentence punishes him for a future crime and hence violates his right to due process of law.[2] The sentence that the judge imposed was one that he could have lawfully imposed initially. See G. L. c. 12, § 11J (1990 ed.). The question then is whether the judge relied on an impermissible consideration in imposing that sentence. That question in turn requires our consideration of (1) whether the judge properly could establish as a condition of the defendant's probation the requirement that he not participate in unlawful activities of Operation Rescue or any similar organization and (2) whether, when the defendant refused to accept the condition of the proposed probation, the judge properly could impose a committed term of two and one-half years.

---

[2]The defendant's argument that the imposition of the sentence violated his rights under G. L. c. 112, § 121 (1990 ed.), lacks substance. That statute provided him no rights. It is concerned with individuals in any "state aided program or institution." The defendant was not such an individual.

It is hardly debatable that a judge may provide, as a condition of probation, that the defendant agree not to violate the criminal law of the Commonwealth. Nor is it improper to refer to a specific course of criminal conduct that a defendant should not commit during the term of his probation. That is particularly so when the sentencing record before the judge shows a repeated pattern of violations involving that specific conduct. So here, the judge in effect offered the defendant a contract that provided for less time to be served in the house of correction in exchange for the defendant's promise not to violate the law during the three years of probation. It seems to have been a "good deal" for the defendant, who would be agreeing only to do what the law required of him anyway. The defendant, however, declined to enter into the agreement, as was his right. The offer was not accepted, and the judge was free to impose a different sentence which he did. In no proper sense could the judge's decision be viewed as punishment for future criminal conduct.

A defendant's character and propensity for rehabilitation are relevant sentencing considerations. See *Commonwealth* v. *Coleman,* 390 Mass. 797, 805 (1984). The defendant's refusal in open court to agree to comply with the law presented strong evidence that his propensity for rehabilitation was not good.[3]

*Judgments affirmed.*

---

[3]We reject the dissent's various characterizations of the reason Cotter received the sentence he did. The judge did not retaliate against Cotter or punish him. Cotter rejected the terms of probation offered to him which required him to agree not to engage in the unlawful activities of Operation Rescue or other such group. Cotter was not obliged to agree what those illegal activities might be. Cotter had an option. He made his choice. It is hardly inappropriate to seek to avoid recidivism by a repeat offender.

It may be, as the dissent says, this case "is not entirely dissimilar" from *Thomas* v. *United States,* 368 F.2d 941 (5th Cir. 1966) (harsher sentence imposed because defendant refused to admit his guilt of crime for which he was convicted), but it is very nearly so.

NOLAN, J., (dissenting, with whom Lynch and O'Connor, JJ., join). Today a majority of this court allows a judge to sentence a person to a period of imprisonment, not for any existing violation of law, but for his conscientious objection to abortion. I cannot agree that the law permits this, and therefore I dissent.

The trial judge in this case sentenced the defendant to "two and a half years in the House of Correction, one year to serve, the balance suspended for a period of three years." He then instructed the clerk to read the sentence to the defendant. The defendant was informed that his probation was conditioned on "keeping the peace" and "good behavior." The clerk then asked the defendant whether he agreed with the terms. The defendant responded by asking, "Do you mean that I will not participate in further rescues?" to which the clerk answered, "I haven't said that yet." The defendant, consequently, agreed to those terms. The clerk then read that, as a condition of the suspended sentence, the defendant must not "participate in any unlawful activities of Operation Rescue Boston or any other such similar group." This time, when the clerk asked whether the defendant recognized, understood and agreed to the terms, the defendant declared, "No, I do not." The judge retaliated by sentencing the defendant to two and one-half years' imprisonment with no suspension.

Our law does not permit a judge to punish a defendant for not making a promise in open court. The colloquy above illustrates clearly that to obtain a suspended sentence, Cotter was required to avow that his attempts to "rescue" unborn children were "unlawful activities," and that he will not participate in them further, regardless of the circumstances. Cotter chose not to make that promise. Thus, by adding one and one-half years of imprisonment to the defendant's sentence, the judge punished Cotter, not for violating the conditions of his sentence, but for refusing to *promise* not to violate them. Such conduct by a court is unprecedented and, to my mind, unjustifiable.

This case is not entirely dissimilar from the case of *Thomas* v. *United States*, 368 F.2d 941 (5th Cir. 1966), in which the United States Court of Appeals set aside a sentence that was imposed because the defendant, though given the option of a more lenient sentence if he said that he was guilty, nevertheless protested his innocence. The court said in *Thomas*: "When Thomas received harsher punishment than the court would have decreed had he waived his Fifth Amendment rights, he paid a judicially imposed penalty for exercising his constitutionally guaranteed rights," *supra* at 946.

I also dissent from the majority's decision on the issue of venue for the reasons I set forth in *Commonwealth* v. *Brogan, ante* 169, 179 (1993).