484 S.E.2d 134

**Vernon Leroy SHIFFLETT**

**v.**

**COMMONWEALTH of Virginia.**

**Record No. 2258–95–2.**

Court of Appeals of Virginia,
Richmond.

April 15, 1997.

Rehearing En Banc Granted May 20, 1997.

Scott Goodman, Charlottesville, for appellant.

Richard B. Smith, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

Present: BENTON, ANNUNZIATA and OVERTON, JJ.

ANNUNZIATA, Judge.

Following a jury trial, appellant, Vernon Leroy Shifflett, was convicted of driving after having been adjudicated an habitual offender and after having been twice convicted of the same offense. Appellant was sentenced to three years imprisonment. On appeal, he contends the trial court erred in preventing him from eliciting testimony at the sentencing phase of his trial concerning the impact of his incarceration upon his family and his employment. He further contends the trial court erred in limiting the scope of his closing argument at the sentencing phase. Finding no error, we affirm.

I.

Appellant was adjudicated an habitual offender in 1990 and convicted in both 1992 and 1993 of driving after having been so adjudicated. In January 1995, Virginia State Trooper Bob Davis saw appellant standing alone and fueling a pickup truck. Davis recognized appellant as an habitual offender he had arrested previously for driving the same vehicle. Davis drove toward appellant's home, pulled off the road, and waited. Appellant drove by Davis with Kim Roach in the passenger seat; Davis stopped appellant and arrested him.

During the guilt phase of his trial, appellant testified that he was employed as a painter. He further testified that he lived with Kim Roach and their two children, ages eleven and four. The jury found appellant guilty.

Prior to the sentencing phase, appellant's counsel stated his intent to introduce mitigating evidence concerning appellant's employment and family responsibilities. Specifically, counsel stated his intent to elicit testimony from Kim Roach concerning the income that appellant brought to the family and the effect his incarceration would have on the family. The trial

court refused to allow such testimony on the ground that it was not relevant to punishment. During the sentencing phase, the court precluded appellant's counsel from eliciting testimony from appellant's employer on the same ground. The employer would have testified that appellant earned nine dollars per hour, did excellent work, and that the employer needed to keep him in his employ.

In his argument at sentencing, appellant's counsel urged consideration of the fact that, instead of hiding in the bushes waiting to catch appellant, "[i]t would have been just as easy" for Davis to have approached appellant and warned him not to drive. The court sustained the Commonwealth's objection to the argument on the ground that it was not relevant to punishment.

## II.

Code § 19.2–295.1, detailing the sentencing proceeding in bifurcated felony jury trials, provides, in part:

> In cases of trial by jury, upon a finding that the defendant is guilty of a felony, a separate proceeding limited to the ascertainment of punishment shall be held as soon as practicable before the same jury.... After the Commonwealth has introduced ... evidence of prior convictions, or if no such evidence is introduced, the defendant may introduce relevant, admissible evidence related to punishment.

We must determine whether the evidence appellant sought to introduce falls within the scope of "relevant ... evidence related to punishment" for consideration by the jury under Code § 19.2–295.1. We review the trial court's decision for abuse of discretion. *See Coppola v. Commonwealth*, 220 Va. 243, 253, 257 S.E.2d 797, 804 (1979), *cert. denied*, 444 U.S. 1103, 100 S.Ct. 1069, 62 L.Ed.2d 788 (1980) ("discretion is vested in the trial court to determine, subject to the rules of evidence governing admissibility, the evidence which may be adduced in mitigation of the offense").

Although this is an issue of first impression, we base our decision on well accepted principles found in two sources.

First, pursuant to the principles of statutory construction, we analogize the sentencing provisions of Code § 19.2–295.1 to the statutory provisions applicable to the sentencing phase of bifurcated capital murder trials. *See Gilliam v. Commonwealth,* 21 Va.App. 519, 522–23, 465 S.E.2d 592, 594 (1996); *Bunn v. Commonwealth,* 21 Va.App. 593, 598, 466 S.E.2d 744, 746 (1996). Second, we look to the "declared purposes of punishment for criminal conduct," including " 'deterrence (general and specific), incapacitation, retribution and rehabilitation.' " *Gilliam,* 21 Va.App. at 524, 465 S.E.2d at 594 (quoting *United States v. Morris,* 837 F.Supp. 726, 729 (E.D.Va.1993)).[1]

In reference to the statutory provisions applicable to the sentencing phase of bifurcated capital murder trials, we note that under Code § 19.2–264.4, "[t]he jury has the duty to consider all the evidence relevant to sentencing, both favorable and unfavorable" before making its determination. *E.g., Stamper v. Commonwealth,* 220 Va. 260, 275–76, 257 S.E.2d 808, 819 (1979), *cert. denied,* 445 U.S. 972, 100 S.Ct. 1666, 64 L.Ed.2d 249 (1980). Evidence considered relevant to jury sentencing and in mitigation of punishment in capital murder sentencing is specifically addressed in Code § 19.2–264.4(B).[2]

---

1. "Recognized '[t]heories of punishment' include prevention, restraint, rehabilitation, deterrence, education, and retribution." *Gilliam,* 21 Va.App. at 524 n. 3, 465 S.E.2d at 594 n. 3 (quoting Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 1.5 (1986)).

2. Code § 19.2–264.4(B) provides:

   In cases of trial by jury, evidence may be presented as to any matter which the court deems relevant to sentence, except that reports under the provisions of § 19.2–299, or under any rule of court, shall not be admitted into evidence.

   Evidence which may be admissible, subject to the rules of evidence governing admissibility, may include the circumstances surrounding the offense, the history and background of the defendant, and any other facts in mitigation of the offense. Facts in mitigation may include, but shall not be limited to, the following: (i) The defendant has no significant history of prior criminal activity, (ii) the capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance, (iii) the victim was a participant in the defendant's conduct or consented to the act, (iv) at

Although the list of mitigating factors is not exclusive, the enumerated factors share a common denominator: they all address either the defendant's history or background or the circumstances surrounding the crime. *See Coppola,* 220 Va. at 253, 257 S.E.2d at 804 ("The kind of evidence therein contemplated bears upon the record of the defendant and the atrociousness of his crime."). Accordingly, under the statutory scheme, mitigating evidence is that which shows "extenuating circumstances tending to explain, but not excuse, [the] commission of the crime." *Correll v. Commonwealth,* 232 Va. 454, 468, 352 S.E.2d 352, 360, *cert. denied,* 482 U.S. 931, 107 S.Ct. 3219, 96 L.Ed.2d 705 (1987) (quoting *Coppola,* 220 Va. at 253, 257 S.E.2d at 797). *See also Burket v. Commonwealth,* 248 Va. 596, 616, 450 S.E.2d 124, 135 (1994), *cert. denied,* 514 U.S. 1053, 115 S.Ct. 1433, 131 L.Ed.2d 314 (1995); *Murphy v. Commonwealth,* 246 Va. 136, 142, 431 S.E.2d 48, 52, *cert. denied,* 510 U.S. 928, 114 S.Ct. 336, 126 L.Ed.2d 281 (1993).

■ Guided by these principles, we find no abuse of discretion on the part of the trial court in the present case. Appellant sought to elicit testimony from his girlfriend and employer concerning the financial impact his incarceration would have on his family and employer. Unlike the fact that appellant resided with his family and that he was employed, evidence of which was admitted during the guilt phase of his trial, the testimony in question did not relate to appellant's history or background or to the circumstances surrounding the crime. That testimony was, therefore, not relevant evidence related to punishment for consideration by the jury under Virginia law. *See* Code § 19.2–264.4; *Coppola,* 220 Va. at 253–54, 257 S.E.2d at 804 (Effect of incarceration upon relatives not mitigating circumstance "analogous to any of the evidence specifically approved in the statute."). In short, the proffered evidence concerning the impact of appellant's incar-

---

the time of the commission of the capital felony, the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was significantly impaired, (v) the age of the defendant at the time of the commission of the capital offense or (vi) mental retardation of the defendant.

ceration upon his family and employer did not tend to explain the commission of the crime.

Furthermore, in the context of the jury's role in sentencing, we find no support for the admission of the evidence in question under the declared purposes of punishment for criminal conduct. Those purposes relate to (1) the defendant (specific deterrence, incapacitation and rehabilitation); (2) the victim (retribution); or (3) the public at large (general deterrence). We find that, given the facts of this case, none of these purposes would be served by the evidence appellant sought to elicit.[3]

## III.

Determining the appropriateness of a closing argument is a matter committed to the discretion of the trial court. *Griffin v. Commonwealth*, 22 Va.App. 622, 624, 472 S.E.2d 285, 287 (1996). We find no abuse of discretion in the trial court's refusal to permit appellant's counsel to argue to the jury that, instead of waiting for appellant to drive the vehicle, it would have been "just as easy" for Trooper Davis to have warned appellant not to drive. Based on the principles discussed in the preceding section, we find such argument is not relevant to the determination of an appropriate sentence.

---

**3.** We emphasize the distinction between the role of the court and the role of the jury with respect to sentencing, *see, e.g., Duncan v. Commonwealth*, 2 Va.App. 342, 343 S.E.2d 392 (1986), and conclude that distinction was not eviscerated by the recent amendments to the statutory scheme concerning sentencing proceedings. Here, we address the relationship between appellant's proffered evidence and the declared purposes of punishment in the context of the jury's sentencing role; *i.e.*, to determine an appropriate term of punishment within the statutorily prescribed range of incarceration. We do not disagree with the principles espoused by the dissent in the context of the court's sentencing role, the context in which the cases cited by the dissent arose. *See, e.g., Lockett v. Ohio*, 438 U.S. 586, 602–03, 98 S.Ct. 2954, 2963–64, 57 L.Ed.2d 973 (1978) (addressing sentencing *judge's* possession of the fullest information possible concerning the defendant's life and characteristics).

The appellant's conviction and sentence are accordingly affirmed.

*Affirmed.*

BENTON, Judge, dissenting.

Because I believe the trial judge erred in excluding from the jury's consideration mitigating evidence relevant to sentencing, I dissent.

## I.

During the jury trial, Trooper Bob Davis testified for the Commonwealth that he passed a service station and saw Shifflett pumping gas into Norma Roach's truck. Trooper Davis recognized Shifflett as an habitual offender whom he had arrested a year earlier. Trooper Davis waited at a place that he knew Shifflett would have to pass to get home. When Shifflett drove by, Trooper Davis signalled for Shifflett to stop.

In Shifflett's defense, a friend and co-worker testified that he drove Shifflett to work on the date of the offense and was to drive Shifflett home that evening. However, when the friend learned in the middle of the day that he had to work late, he told Shifflett to find another ride home.

Shifflett testified that he contacted Norma Kim Roach, the woman with whom he lives and who is the mother of his children, and asked her to come for him. However, Roach said that she did not feel well. Shifflett told Roach that if she was not at his place of employment at the end of his work shift he would attempt to find a ride with someone or walk if necessary. He worked in Charlottesville but lived in Earlysville.

When Shifflett left work, Roach was waiting in her truck and told Shifflett that she still was not feeling well. While driving home, Roach became dizzy and began to lean forward. Shifflett testified that he grabbed the steering wheel and told Roach to stop. After Roach drove into a restaurant's parking

lot, Shifflett obtained food and a drink for her. Shifflett testified that after Roach told him that she still did not feel better, he drove the truck because their children, ages eleven and four, were alone at home.

Shifflett testified that he stopped on the way home to buy gas for the truck. While Shifflett was pumping the gas, Roach went inside the store to pay for the gas. When Shifflett drove away from the store, the trooper signalled for Shifflett to stop.

After the jury found Shifflett guilty of driving after having been declared an habitual offender, Shifflett's counsel informed the trial judge that he intended to offer mitigating testimony about Shifflett's employment, family responsibilities, and his motive for committing the offense. The trial judge ruled that testimony from Roach about Shifflett's family responsibilities was inadmissible. Over Shifflett's objection, the trial judge ruled that evidence at the penalty phase would be limited to the "range of punishment established by [the] legislature, injury to the victim, use of [a] weapon, extent of [the] offender's participation, the offense, [the] offender's motive in committing the offense, prior record and rehabilitative efforts, drug and alcohol use, age, health and education."

During the penalty phase, Roach was permitted to testify that she was not feeling well when Shifflett called and told her that he needed a ride home. She went for him because he had no means of getting home, except by walking. She testified that as they were leaving Charlottesville, she became dizzy from vertigo. She further testified that she has had episodes of vertigo for twelve years, that she has had three ear surgeries, and that she continues to receive treatment. When she did not feel better after eating, she asked Shifflett to drive because she was concerned about their children being at home alone.

Roach's doctor testified that Roach suffers from vertigo. He testified that her "vertigo ... is a ... dizzy condition ... that's transient, that comes and goes."

When Shifflett's counsel sought to question Shifflett's employer about Shifflett's employment, the trial judge sustained the Commonwealth's objection based on the prior ruling limiting the evidence. However, after the jury rendered its verdict on the sentence, the trial judge discharged the jury and heard the testimony of Shifflett's employer, William Amos Breeden, before he imposed the jury's sentence. Breeden testified that Shifflett did an "excellent job" as his employee and that Shifflett was paid nine dollars per hour. Breeden also testified as follows about efforts Shifflett made to get to work:

> Well, for a couple months or three months, I was going to pick [Shifflett] up at his house and taking him home and his dad also paints, so, I hired his dad a month ago and he brings him to my house and we leave from my house every morning at 5:30.

Breeden testified that Shifflett displayed no "indication of any alcohol abuse."

## II.

The rule is long standing in Virginia that "[w]ithin the limits prescribed by law, the terms of confinement in the state correctional facility or in jail and the amount of fine, if any, of a person convicted of a criminal offense, shall be ascertained by the jury, or by the court in cases tried without a jury." Code § 19.2–295. Recently, the legislature established a procedure bifurcating the trial and punishment proceedings. In pertinent part, the statute states as follows:

> In cases of trial by jury, upon a finding that the defendant is guilty of a felony, a separate proceeding limited to the ascertainment of punishment shall be held as soon as practicable before the same jury. ... After the Commonwealth has introduced ... evidence of prior convictions, or if no such evidence is introduced, the defendant may introduce relevant, admissible evidence related to punishment.

Code § 19.2–295.1. This statute vests in juries wide discretion in recommending a sentence within the statutory framework.

The general principle is well established that in the exercise of its sentencing function, "[a] jury must be allowed to consider ... all relevant evidence." *Jurek v. Texas,* 428 U.S. 262, 271, 96 S.Ct. 2950, 2956, 49 L.Ed.2d 929 (1976). "For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender." *Pennsylvania ex rel. Sullivan v. Ashe,* 302 U.S. 51, 55, 58 S.Ct. 59, 61, 82 L.Ed. 43 (1937).

> [W]here sentencing discretion is granted, it generally has been agreed that the sentencing [jury's] "possession of the fullest information possible concerning the defendant's life and characteristics" is "[h]ighly relevant—*if not essential*—[to the] selection of an appropriate sentence...."

*Lockett v. Ohio,* 438 U.S. 586, 602–03, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (quoting *Williams v. People of State of New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949)). Because the circumstances of the offense and the character and propensities of the offender vary in each case, "the concept of individualized sentencing in criminal cases generally, although not constitutionally required, has long been accepted in this country." *Id.* at 602, 98 S.Ct. at 2963.

The majority characterizes the evidence that the trial judge excluded from the jury as testimony "concerning the financial impact [Shifflett's] incarceration would have on his family and employer" and concludes that the evidence "did not relate to [Shifflett's] history or background." I disagree.

The employer's testimony regarding Shifflett's success at work and his efforts to maintain a commuting schedule that obviated his need to drive reflect on Shifflett's "character and propensities." *Ashe,* 302 U.S. at 55, 58 S.Ct. at 61. Moreover, relevant sentencing factors traditionally have included an accused's habits, lifestyle, family, and occupation. *See State v. Lemley,* 552 N.W.2d 409, 412 (S.D.1996); *State v. Morris,* 750 S.W.2d 746, 750 (Tenn.Crim.App.1987).

Although the trial judge did not admit this mitigating testimony for the jury to consider, the trial judge obviously was aware that testimony concerning Shifflett's employment may have had a bearing on the punishment decision. The trial judge considered the testimony of Shifflett's employer before he imposed the jury's sentence. However, the principle is well established that judges "do not weigh the evidence" of mitigation for the sentencing jury. *Eddings v. Oklahoma*, 455 U.S. 104, 117, 102 S.Ct. 869, 878, 71 L.Ed.2d 1 (1982). The testimony of Shifflett's employer was relevant, admissible, and erroneously excluded from the jury's consideration. *See Jurek*, 428 U.S. at 271, 96 S.Ct. at 2956 (stating that sentencing *juries* must be provided with "all relevant evidence").

In addition, the testimony of Roach was not offered merely to prove the family's apparent need for his income. Her testimony would have proved that Shifflett was a responsible father who worked earnestly to provide for his children. Certainly, evidence that a defendant has contributed positively to his family situation is a relevant circumstance.

Shifflett's evidence reflected upon his habits, character, and family circumstances and was therefore relevant to determining an appropriate punishment. I would therefore hold that the trial judge erred in excluding the evidence from the jury's consideration. *Accord, State v. Lee*, 600 So.2d 796, 799 (La.Ct. App.1992) (stating that when sentencing a defendant, "[i]mportant elements to be considered are the convict's personal history (age, family ties, marital status, health, employment record), prior criminal record or absence thereof, [the] seriousness of the particular offense, and the likelihood of recidivism or rehabilitation"); *People v. Andrade*, 279 Ill.App.3d 292, 215 Ill.Dec. 859, 869, 664 N.E.2d 256, 266 (1996) (stating that when sentencing a defendant, "[r]elevant factors include ... defendant's credibility, demeanor, general moral character, mentality, social environment, habits, age, and criminal history"). *See generally People v. Whalin*, 885 P.2d 293, 298 (Colo.Ct.App.1994) (stating that when sentencing a defendant, "[r]elevant factors to be considered include ... the character of the offender"); *Commonwealth v. Cotter*, 415 Mass. 183,

612 N.E.2d 1145, 1148 (1993) (stating that when sentencing a defendant, the "defendant's character and propensity for rehabilitation are relevant . . . considerations").

## UPON A PETITION FOR REHEARING EN BANC BEFORE THE FULL COURT

On April 28, 1997 came Vernon Leroy Shifflett, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on April 15, 1997, and grant a rehearing en banc thereof.

On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on April 15, 1997 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellant shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.