COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick,[*] Judges Benton, Coleman,
       Moon,[**] Willis, Elder, Bray, Annunziata and Overton
Argued at Richmond, Virginia


VERNON LEROY SHIFFLETT
                                         OPINION BY
v.   Record No. 2258-95-2      JUDGE JAMES W. BENTON, JR.
                                      DECEMBER 30, 1997
COMMONWEALTH OF VIRGINIA


                 UPON A REHEARING EN BANC

         FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                 Paul M. Peatross, Jr., Judge

         Scott Goodman for appellant.

         Richard B. Smith, Assistant Attorney General
         (Richard Cullen, Attorney General, on brief),
         for appellee.


     Vernon Leroy Shifflett was convicted by a jury of driving

after having been adjudicated an habitual offender and after

having been twice convicted of the same offense. The jury

sentenced him to three years imprisonment. Shifflett contends

that the trial judge erred in excluding from the jury's

consideration mitigating evidence relevant to sentencing. A

panel of this Court, with one judge dissenting, affirmed the

trial judge's decision. See Shifflett v. Commonwealth, 24 Va.

App. 538, 484 S.E.2d 134 (1997). For the reasons that follow,

upon rehearing en banc, we reverse and remand for a new

_____

     [*]On November 19, 1997, Judge Fitzpatrick succeeded Judge
Moon as chief judge.

     [**]Judge Moon participated in the hearing and decision of this
case prior to his retirement on November 25, 1997.

sentencing proceeding in accordance with the provisions of Code § 19.2-295.1.

I.

During the guilt phase of Shifflett's trial, State Police Trooper Bob Davis testified for the Commonwealth that he passed a service station and saw Shifflett pumping gas into Norma Roach's truck. Trooper Davis recognized Shifflett as an habitual offender whom he had arrested a year earlier. Trooper Davis waited at a place that he knew Shifflett would have to pass to get home. When Shifflett drove by with Roach in the passenger seat, Trooper Davis signalled for Shifflett to stop.

In Shifflett's defense, a friend and co-worker testified that he drove Shifflett to work on the date of the offense and was to drive Shifflett home that evening. However, when the friend learned in the middle of the day that he had to work late, he told Shifflett to find another ride home.

Shifflett testified that he contacted Norma Kim Roach, the woman with whom he lives and who is the mother of his children, and asked her to come for him. However, Roach said that she did not feel well. Shifflett told Roach that if she was not at his place of employment at the end of his work shift he would attempt to find a ride with someone or walk if necessary. He worked in Charlottesville but lived in Earleysville.

When Shifflett left work, Roach was waiting in her truck and told Shifflett that she still was not feeling well. While

driving home, Roach became dizzy and began to lean forward. Shifflett testified that he grabbed the steering wheel and told Roach to stop. After Roach drove into a restaurant's parking lot, Shifflett obtained food and a drink for her. Shifflett testified that after Roach told him that she still did not feel better, he drove the truck because their children, ages eleven and four, were alone at home.

Shifflett testified that he stopped on the way home to buy gas for the truck. While Shifflett was pumping the gas, Roach went inside the store to pay for the gas. When Shifflett drove away from the store, the officer signalled for Shifflett to stop.

After the jury found Shifflett guilty of driving after having been declared an habitual offender, Shifflett's counsel informed the trial judge that he intended to offer mitigating testimony about Shifflett's employment, family responsibilities, and his motive for committing the offense. The trial judge ruled that testimony from Roach about Shifflett's family responsibilities was inadmissible. Over Shifflett's objection, the trial judge ruled that evidence at the penalty phase would be limited to the "range of punishment established by [the] legislature, injury to the victim, use of [a] weapon, extent of [the] offender's participation, the offense, [the] offender's motive in committing the offense, prior record and rehabilitative efforts, drug and alcohol use, age, health and education."

During the penalty phase, Roach was permitted to testify

that she was not feeling well when Shifflett called and told her that he needed a ride home.  She went for him because he had no means of getting home, except by walking.  She testified that as they were leaving Charlottesville, she became dizzy from vertigo.  She further testified that she has had episodes of vertigo for twelve years, that she has had three ear surgeries, and that she continues to receive treatment.  When she did not feel better after eating, she asked Shifflett to drive because she was concerned about their children being at home alone.

Roach's doctor testified that Roach suffers from vertigo.  He testified that her "vertigo . . . is a . . . dizzy condition . . . that's transient, that comes and goes."

When Shifflett's counsel sought to question Shifflett's employer about Shifflett's employment, the trial judge sustained the Commonwealth's objection based on the prior ruling limiting the evidence.  However, after the jury rendered its verdict on the sentence, the trial judge discharged the jury and heard the testimony of Shifflett's employer, William Amos Breeden, before he imposed the jury's sentence.  Breeden testified that Shifflett did an "excellent job" as his employee and that Shifflett was paid nine dollars per hour.  Breeden also testified as follows about efforts Shifflett made to get to work:

> Well, for a couple months or three months, I was going to pick [Shifflett] up at his house and taking him home and his dad also paints, so, I hired his dad a month ago and he brings him to my house and we leave from my house every morning at 5:30.

Breeden testified that Shifflett displayed no "indication of any alcohol abuse."

II.

The rule is long standing in Virginia that "[w]ithin the limits prescribed by law, the terms of confinement in the state correctional facility or in jail and the amount of fine, if any, of a person convicted of a criminal offense, shall be ascertained by the jury, or by the court in cases tried without a jury." Code § 19.2-295. Recently, the legislature established a procedure bifurcating the trial and punishment proceedings. In pertinent part, the statute states as follows:

> In cases of trial by jury, upon a finding that the defendant is guilty of a felony, a separate proceeding limited to the ascertainment of punishment shall be held as soon as practicable before the same jury. . . . After the Commonwealth has introduced . . . evidence of prior convictions, or if no such evidence is introduced, the defendant may introduce relevant, admissible evidence related to punishment.

Code § 19.2-295.1. This statute vests in juries wide discretion in recommending a sentence within the statutory framework.

The purpose of Code § 19.2-295.1 is to provide two separate phases of a trial. "The procedure assures the jury access to 'information specific only to sentencing, apart from the considerations of guilt or innocence,' thereby promoting a punishment appropriate to the circumstances without [prejudicing] the initial determination of guilt or innocence." Daye v. Commonwealth, 21 Va. App. 688, 689, 467 S.E.2d 287, 288 (1996) (citation omitted). "'The sentencing decision . . . is a quest for a sentence that best effectuates the criminal justice

-6-

system's goals of deterrence (general and specific), incapacitation, retribution and rehabilitation.'" Gilliam v. Commonwealth, 21 Va. App. 519, 524, 465 S.E.2d 592, 594 (1996) (citation omitted) (footnote omitted).

The general principle is well established that in the exercise of its sentencing function, "[a] jury must be allowed to consider . . . all relevant evidence." Jurek v. Texas, 428 U.S. 262, 271 (1976); see Pierce v. Commonwealth, 21 Va. App. 581, 584-85, 466 S.E.2d 130, 132 (1996). "For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender." Pennsylvania v. Ashe, 302 U.S. 51, 55 (1937).

> [W]here sentencing discretion is granted, it generally has been agreed that the sentencing [jury's] "possession of the fullest information possible concerning the defendant's life and characteristics" is "[h]ighly relevant -- if not essential -- [to the] selection of an appropriate sentence . . . ."

Lockett v. Ohio, 438 U.S. 586, 602-03 (1978) (quoting Williams v. New York, 337 U.S. 241, 247 (1949)). Because the circumstances of the offense and the character and propensities of the offender vary in each case, "the concept of individualized sentencing in criminal cases generally, although not constitutionally required, has long been accepted in this country." Id. at 602.

The employer's testimony regarding Shifflett's success at

-7-

work and his efforts to maintain a commuting schedule that obviated his need to drive reflect on Shifflett's "character and propensities." Ashe, 302 U.S. at 55. Moreover, relevant sentencing factors traditionally have included an accused's habits, lifestyle, mental resources, family, and occupation. See Bassett v. Commonwealth, 13 Va. App. 580, 581, 414 S.E.2d 419, 420 (1992); State v. Lemley, 552 N.W.2d 409, 412 (S.D. 1996); State v. Morris, 750 S.W.2d 746, 750 (Tenn. Crim. App. 1987). Cf. Burkett v. Commonwealth, 248 Va. 596, 615, 450 S.E.2d 124, 135 (1994); Murphy v. Commonwealth, 246 Va. 136, 141, 431 S.E.2d 48, 51 (1993); Correll v. Commonwealth, 232 Va. 454, 468, 352 S.E.2d 352, 360 (1987) (capital murder cases in which the trial judge considered issues such as defendant's age, family background, and work history in sentencing phase of trial).

Although the trial judge did not admit this mitigating testimony for the jury to consider, the trial judge obviously was aware that testimony concerning Shifflett's employment may have had a bearing on the punishment decision. The trial judge considered the testimony of Shifflett's employer before he imposed the jury's sentence. However, the principle is well established that judges "do not weigh the evidence" of mitigation for the sentencing jury. Eddings v. Oklahoma, 455 U.S. 104, 117 (1982). The testimony of Shifflett's employer was relevant, admissible, and erroneously excluded from the jury's consideration. See Jurek, 428 U.S. at 271 (stating that

sentencing <u>juries</u> must be provided with "all relevant evidence").

In addition, the testimony of Roach was not offered merely to prove the family's apparent need for his income. Her testimony would have proved that Shifflett was a responsible father who worked earnestly to provide for his children. Certainly, evidence that a defendant has contributed positively to his family situation is a relevant circumstance.

Shifflett's evidence reflected upon his habits, character, and family circumstances and was therefore relevant to determining an appropriate punishment. We therefore hold that the trial judge erred in excluding the evidence from the jury's consideration. <u>Accord</u> <u>State v. Lee</u>, 600 So.2d 796, 799 (La. Ct. App. 1992) (stating that when sentencing a defendant, "[i]mportant elements to be considered are the convict's personal history (age, family ties, marital status, health, employment record), prior criminal record or absence thereof, [the] seriousness of the particular offense, and the likelihood of recidivism or rehabilitation"); <u>People v. Andrade</u>, 664 N.E.2d 256, 266 (Ill. App. Ct. 1996) (stating that when sentencing a defendant, "[r]elevant factors include . . . defendant's credibility, demeanor, general moral character, mentality, social environment, habits, age, and criminal history"). <u>See</u> <u>generally</u> <u>People v. Whalin</u>, 885 P.2d 293, 298 (Colo. Ct. App. 1994) (stating that when sentencing a defendant, "[r]elevant factors to be considered include . . . the character of the offender");

Commonwealth v. Cotter, 612 N.E.2d 1145, 1148 (Mass. 1993) (stating that when sentencing a defendant, the "defendant's character and propensity for rehabilitation are relevant . . . considerations").

Accordingly, we reverse and remand the case for a new sentencing proceeding consistent with this ruling.

Reversed and remanded.

Annunziata, J., with whom Coleman and Overton, JJ., join, dissenting.

Because I believe the trial court did not abuse its discretion in excluding appellant's evidence of the impact of his incarceration on his family and employment, I respectfully dissent.

Under Code § 19.2-295.1, detailing the sentencing proceeding in bifurcated felony jury trials, a "defendant may introduce relevant, admissible evidence related to punishment." The question before this Court is whether the trial court abused its discretion in determining that the evidence appellant sought to introduce did not fall within the scope of "relevant . . . evidence related to punishment" under Code § 19.2-295.1. See Coppola v. Commonwealth, 220 Va. 243, 253, 257 S.E.2d 797, 804 (1979) ("[D]iscretion is vested in the trial court to determine, subject to the rules of evidence governing admissibility, the evidence which may be adduced in mitigation of the offense.").

Three well-accepted principles should guide our analysis of this issue. First, pursuant to the principles of statutory construction, the sentencing provisions of Code § 19.2-295.1 may be validly analogized to the statutory provisions applicable to the sentencing phase of bifurcated capital murder trials. See Gilliam v. Commonwealth, 21 Va. App. 519, 522-23, 465 S.E.2d 592, 594 (1996); Bunn v. Commonwealth, 21 Va. App. 593, 598, 466 S.E.2d 744, 746 (1996). Second, this Court must look to the "declared purposes of punishment for criminal conduct," including

-11-

"`deterrence (general and specific), incapacitation, retribution and rehabilitation.'" Gilliam, 21 Va. App. at 524, 465 S.E.2d at 594 (quoting United States v. Morris, 837 F. Supp. 726, 729 (E.D. Va. 1993)).[1] Third, Virginia law has historically maintained a clear distinction between the roles played by judge and jury in criminal sentencing. The trial judge, rather than the jury, "is vested with the responsibility of considering mitigating circumstances and pronouncing sentence." Bruce v. Commonwealth, 9 Va. App. 298, 303, 387 S.E.2d 279, 281 (1990) (citing Duncan v. Commonwealth, 2 Va. App. 342, 345, 343 S.E.2d 392, 394 (1986)); see also Vines v. Muncy, 553 F.2d 342, 349 (4th Cir. 1977); Allard v. Commonwealth, 24 Va. App. 57, 67-68, 480 S.E.2d 139, 144 (1997); Duncan, 2 Va. App. at 345-46, 343 S.E.2d at 394-95.

Under Code § 19.2-264.4, the statutory provisions applicable to the sentencing phase of bifurcated capital murder trials, "[t]he jury has the duty to consider all the evidence relevant to sentencing, both favorable and unfavorable" before making its determination. E.g., Stamper v. Commonwealth, 220 Va. 260, 275-76, 257 S.E.2d 808, 819 (1979). Evidence considered relevant to jury sentencing and in mitigation of punishment in capital murder sentencing is specifically addressed under Code

---

[1]"Recognized `[t]heories of punishment' include prevention, restraint, rehabilitation, deterrence, education, and retribution." Gilliam, 21 Va. App. at 524 n.3, 465 S.E.2d at 594 n.3 (quoting Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 1.5 (1986)).

§ 19.2-264.4(B).[2] Although the list of mitigating factors is not exclusive, the enumerated factors share a common denominator: they all address either the defendant or the circumstances surrounding the crime. See Coppola, 220 Va. at 253, 257 S.E.2d at 804 ("The kind of evidence therein contemplated bears upon the record of the defendant and the atrociousness of his crime."). Accordingly, under the statutory scheme, mitigating evidence is that which shows "'extenuating circumstances tending to explain,

---

[2]Code § 19.2-264.4(B) provides:

> In cases of trial by jury, evidence may be presented as to any matter which the court deems relevant to sentence, except that reports under the provisions of § 19.2-299, or under any rule of court, shall not be admitted into evidence.

> Evidence which may be admissible, subject to the rules of evidence governing admissibility, may include the circumstances surrounding the offense, the history and background of the defendant, and any other facts in mitigation of the offense. Facts in mitigation may include, but shall not be limited to, the following: (i) The defendant has no significant history of prior criminal activity, (ii) the capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance, (iii) the victim was a participant in the defendant's conduct or consented to the act, (iv) at the time of the commission of the capital felony, the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was significantly impaired, (v) the age of the defendant at the time of the commission of the capital offense or (vi) mental retardation of the defendant.

but not excuse, [the] commission of the crime.'"  <u>Correll v. Commonwealth</u>, 232 Va. 454, 468, 352 S.E.2d 352, 360 (1987) (quoting <u>Coppola</u>, 220 Va. at 253, 257 S.E.2d at 797)); <u>see also Burket v. Commonwealth</u>, 248 Va. 596, 616, 450 S.E.2d 124, 135 (1994); <u>Murphy v. Commonwealth</u>, 246 Va. 136, 142, 431 S.E.2d 48, 52 (1993).

Applying these principles, I would find the trial court did not abuse its discretion.  During the sentencing phase, appellant sought to elicit testimony from his girlfriend and employer concerning the financial impact of his incarceration on his family and employer.  Unlike the fact that appellant resided with his family and that he was employed, evidence of which was before the jury during the guilt phase of the trial, the testimony in question did not relate to appellant himself or the circumstances surrounding the crime.  The evidence was, therefore, not relevant evidence related to punishment under Virginia law.  <u>See</u> Code § 19.2-264.4; <u>Coppola</u>, 220 Va. at 253-54, 257 S.E.2d at 804 (holding that the effect of incarceration upon relatives is not a mitigating circumstance "analogous to any of the evidence specifically approved in the statute").  Nor was the evidence in question offered to explain the commission of the crime.

Furthermore, the relevance of appellant's proffered evidence in this case, as it relates to the purposes of sentencing, must be viewed, not in the abstract, but in the context of the jury's sentencing role under Virginia law.  <u>See</u> <u>Duncan</u>, 2 Va. App. at

345-46, 343 S.E.2d at 394-95.  The declared purposes of punishment for criminal conduct relate to:  (1) the defendant (specific deterrence, incapacitation and rehabilitation); (2) the victim (retribution); or (3) the public at large (general deterrence).  See Gilliam, 21 Va. App. at 524, 465 S.E.2d at 594 (citing Morris, 837 F. Supp. at 729).  However, the jury's role and its relationship to these sentencing purposes have been limited by Virginia law.  Specifically, in non-capital cases, Virginia law confines the jury to determining the appropriate range of incarceration, with the exception that a judge may add a suspended sentence to the jury's recommendation to ensure post-release supervision.  Allard, 24 Va. App. at 68, 480 S.E.2d at 144; Bruce, 9 Va. App. at 303, 387 S.E.2d at 281 (citing Duncan, 2 Va. App. at 345, 343 S.E.2d at 394).  Neither retribution nor rehabilitation through means other than incarceration comes within the purview of the sentencing jury.

Recent amendments to the statutory scheme have not eviscerated the distinction Virginia law has historically maintained between the respective roles of judge and jury, a distinction the majority opinion fails to reflect.  See Allard, 24 Va. App. at 68, 480 S.E.2d at 144.  Most of the cases the majority relies upon arise not in the context of jury sentencing, but rather in the context of sentencing by the judge;[3] the

_____

[3] See Eddings v. Oklahoma, 455 U.S. 104, 112-13 (1982) (holding that the sentencing judge erroneously failed to consider evidence of mitigation); Lockett v. Ohio, 438 U.S. 586, 602-03 (1978) (addressing the "sentencing judge's 'possession of the

-15-

remainder do not address the question of what evidence a defendant is entitled to present to a sentencing jury.[4]

The only authority cited by the majority which addresses mitigation evidence in the context of jury sentencing is <u>Jurek v. Texas</u>, 428 U.S. 262, 271 (1976).  The analysis of the United

---

fullest information possible concerning the defendant's life and characteristics'" (quoting <u>Williams v. New York</u>, 337 U.S. 241, 247 (1949))); <u>Williams</u>, 337 U.S. at 247 (explaining that the sentencing judge needs "the fullest information possible"); <u>People v. Whalin</u>, 885 P.2d 293, 298 (Colo. Ct. App. 1994) (holding that sentencing court did not abuse its discretion in sentencing defendant to sixteen years for sexual assault on a child); <u>People v. Andrade</u>, 664 N.E.2d 256, 266 (Ill. Ct. App.) (holding that sentencing court did not abuse its discretion in sentencing defendant to nine years for delivery of controlled substance), <u>appeal denied</u>, 671 N.E.2d 735 (Ill. 1996); <u>State v. Lee</u>, 600 So. 2d 796, 799 (La. Ct. App. 1992) (holding that sentencing judge adequately considered statutory factors); <u>Commonwealth v. Cotter</u>, 612 N.E.2d 1145, 1148 (Mass. 1993) (holding that sentencing court was justified in refusing to suspend sentence where defendant indicated he would not accept the conditions of probation); <u>State v. Lemley</u>, 552 N.W.2d 409, 411-12 (S.D. 1996) (holding that sentencing court's sentence of 350 years did not impose cruel and unusual punishment); <u>State v. Morris</u>, 750 S.W.2d 746, 750 (Tenn. Ct. Crim. App. 1987) (holding that trial judge properly considered evidence relating to statutory factors); <u>Burket</u>, 248 Va. at 615, 450 S.E.2d at 135 (holding that the sentencing judge adequately considered the mitigation evidence); <u>Murphy</u>, 246 Va. at 141-42, 431 S.E.2d at 360 (holding that the sentencing judge considered all of the evidence in mitigation); <u>Correll</u>, 232 Va. at 468, 352 S.E.2d at 360 (holding that the sentencing judge did not disregard mitigation evidence); <u>Bassett v. Commonwealth</u>, 13 Va. App. 580, 582-83, 414 S.E.2d 419, 420-21 (1992) (holding that the sentencing judge adequately considered mitigating factors).

[4]<u>See</u> <u>Pierce v. Commonwealth</u>, 21 Va. App. 581, 583, 466 S.E.2d 130, 131 (1996) (holding that Code § 19.2-295.1 does not bar a defendant from introducing evidence at the sentencing phase of a jury trial because the Commonwealth does not introduce evidence); <u>Pennsylvania ex rel. Sullivan v. Ashe</u>, 302 U.S. 51, 55 (1937) (holding that a state may provide that a person convicted of breaking out of a penitentiary serve an additional period not exceeding the original sentence).

States Supreme Court in Jurek, however, highlights the distinction between judge and jury sentencing in Virginia. The Texas statute at issue in Jurek provided that the jury's resolution of three statutory questions determined whether the death penalty would be imposed; the judge had no role to play in determining the sentence. Id. at 269. In contrast, Virginia sentencing procedure grants to the judge final authority over the sentence. Duncan, 2 Va. App. at 345, 343 S.E.2d at 394 (citing Vines v. Muncy, 553 F.2d 342, 349 (4th Cir. 1977)). Precisely because the judge bears the ultimate responsibility for imposing sentence, "the consideration of mitigating circumstances [is for] the court." Id. at 345, 343 S.E.2d at 394.

Finally, the majority's approach is foreclosed in large part by the Virginia Supreme Court's decision in Coppola, 220 Va. 243, 257 S.E.2d 797. In Coppola, the trial court excluded evidence of the impact of the defendant's prosecution on his young children. In upholding the trial court's ruling, the Supreme Court held that "the effect of [the defendant's] incarceration upon relatives is not a mitigating circumstance for the jury to consider." Id. at 254, 257 S.E.2d at 804. The effect of appellant's incarceration upon his family, or, by analogy, his employer, likewise "is not a mitigating circumstance for the jury to consider." Id. I would hold that the trial court did not abuse its discretion, and would affirm appellant's conviction.

For these reasons, I respectfully dissent.