Present:  All the Justices

COMMONWEALTH OF VIRGINIA

v.  Record No. 980187

VERNON LEROY SHIFFLETT

                        OPINION BY JUSTICE A. CHRISTIAN COMPTON
                              January 8, 1999

COMMONWEALTH OF VIRGINIA

v.  Record No. 980188

EMMITT LARON TAYLOR


                FROM THE COURT OF APPEALS OF VIRGINIA

     These two criminal appeals, involving findings of guilty in
noncapital felony prosecutions, present a common issue:  Did the
Court of Appeals of Virginia err in reversing the respective
circuit courts, which limited evidence the defendants sought to
introduce during the sentencing proceedings conducted as part of
the bifurcated jury trials?

     Code § 19.2-295.1 sets forth the procedure in such cases.
It provides, in part, that after the prosecution has had the
opportunity to present evidence of the defendant's prior
convictions, "the defendant may introduce relevant, admissible
evidence related to punishment."  We are concerned here with the
meaning of the statutory term "relevant."

     At the outset, we issue a caveat.  We shall adhere strictly
to the content of the records made in the respective trial

courts, a practice not followed in either of these cases by the Court of Appeals, as we shall demonstrate.

In one case, appellee Vernon Leroy Shifflett was found guilty by a jury in the Circuit Court of Albemarle County of operating a motor vehicle on a public highway in January 1995 after having been adjudicated an habitual offender, it being a second or subsequent offense.

Prior to commencement of the sentencing proceeding, the trial court and counsel discussed "what's relevant" with reference to punishment. The attorney for the defendant represented to the court, "I do intend to put on mitigating testimony about his employment, his family responsibilities."

Responding, the court mentioned "factors" that may be relevant to punishment, "range of punishment established by legislature, injury to the victim, use of weapon, extent of offender's participation, the offense, offender's motive in committing the offense, prior record and rehabilitative efforts, drug and alcohol use, age, health and education." The prosecutor then stated, "Why he did it . . . is relevant . . . . But not his job responsibilities and his family responsibilities and the fact that impliedly the common law wife and the children are going to have to make it without him for a while. That has no relevance to it." Defense counsel responded, "I think it does, I think it does."

The trial judge then ruled he would limit the defendant's evidence to the applicable factors previously mentioned and said, "one of them isn't how the family is affected by it." The prosecutor and the court then agreed with defense counsel that "defendant's motive for committing the offense" was admissible. Defendant's girlfriend, and mother of his two small children, claimed she had become ill while driving defendant home from work, necessitating defendant becoming the operator of the vehicle and resulting in his arrest.

Continuing, defense counsel argued to the trial court that he wished to present evidence of the girlfriend's participation in the offense "and what happened that day and the mitigating factor that led him to be behind the wheel [and] testimony from her about his support of the children, his income -- the income that the family has that he brings in and support for her position that she did have those spells and the doctor is here now to testify on the treatment that she's had, to verify what she says and that goes to why he took the wheel, the offender's motive for committing the offense." Responding, the court stated that evidence of defendant's "motive to commit the offense" would be admissible.

The prosecutor then stated he did not object to testimony from the girlfriend's physician but said, "I do object to her getting on the stand and saying I only make so much money and I

3

have to take care of the kids and all those other things." Defense counsel answered, "I think that should come in." The court ruled, "And that's what I'm ruling is not coming in."

During presentation of the evidence during the sentencing phase, the court adhered to its prior rulings that were based on defendant's arguments presented to the court. The girlfriend testified she became dizzy, could no longer operate the vehicle safely, and was forced to allow the defendant to drive. The girlfriend's physician testified he had been treating her for vertigo. The defendant's employer, a painter, testified defendant worked for him but the trial court refused to allow testimony about "defendant's present employment," the trial judge stating he was being consistent with his prior ruling.

After the jury retired to deliberate punishment, defense counsel stated to the court that "with regard to Mr. Leroy Shifflett's employment, Your Honor, that was certainly relevant in terms of where he worked, how he got back and forth to work, what he made in his employment, credentials and how good a worker he was. That's certainly all very relevant." The court responded that "employment" was not among the "factors" discussed earlier that was relevant to punishment.

The jury fixed defendant's punishment to confinement in the penitentiary for three years. After the jury was discharged and before the court sentenced defendant, he presented testimony of

4

his employer.  He stated that he had employed defendant for four months, that defendant was an "excellent" worker, that he (the employer) "need[s]" defendant because he had "a lot of . . . work lined up in the future," and that defendant had been able to find persons to drive him to work.  The court sentenced defendant in accordance with the verdict in a September 1995 judgment order.

Upon appeal, a three-judge panel of the Court of Appeals, one judge dissenting, affirmed the conviction and sentence. Shifflett v. Commonwealth, 24 Va. App. 538, 484 S.E.2d 134 (1997).  The court stated that defendant contended on appeal "the trial court erred in preventing him from eliciting testimony at the sentencing phase of his trial concerning the impact of his incarceration upon his family and his employment." Id. at 540, 484 S.E.2d at 135 (emphasis added).  The court held the trial court did not abuse its discretion in refusing to allow defendant "to elicit testimony from his girlfriend and employer concerning the financial impact his incarceration would have on his family and employer."  Id. at 543, 484 S.E.2d at 136.  That testimony, the court said, was "not relevant evidence related to punishment for consideration by the jury under Virginia law."  Id., 484 S.E.2d at 137.

Upon rehearing en banc, the Court of Appeals, in a 6-3 decision, reversed the case and remanded it for a new sentencing

5

proceeding. Shifflett v. Commonwealth, 26 Va. App. 254, 261, 494 S.E.2d 163, 167 (1997). The court stated that the "employer's testimony regarding Shifflett's success at work and his efforts to maintain a commuting schedule that obviated his need to drive reflects on Shifflett's 'character and propensities,'" which are relevant to sentencing. Id. at 260, 494 S.E.2d at 166. The court further stated that the girlfriend's testimony "was not offered merely to prove the family's apparent need for his income. Her testimony would have proved that Shifflett was a responsible father who worked earnestly to provide for his children. Certainly, evidence that a defendant has contributed positively to his family situation is a relevant circumstance." Id. at 261, 494 S.E.2d at 166. We awarded the Commonwealth this appeal from that judgment of the Court of Appeals.

In the other case, appellee Emmitt Laron Taylor was found guilty by a jury in the Circuit Court of Arlington County of conspiring to distribute five or more pounds of marijuana, possessing with the intent to distribute the same amount of the drug, and transporting the same amount of the drug into Virginia with the intent to sell or distribute it. The defendant was arrested on October 10, 1995 on the premises of Washington National Airport.

6

During the sentencing proceeding, the Commonwealth presented evidence that defendant, 22 years of age at the time of the February 1996 trial, had been convicted in California in 1990 of armed robbery and in 1994 of a violation of California's narcotics laws.

Following presentation of this evidence, the defendant took the witness stand and was asked by his attorney to "tell the jury about your family." After defendant stated he had an older brother, an older sister, and a younger brother, and that the younger brother had been "killed" because "they had a grudge against him," the trial court sustained the prosecutor's objection to the testimony. A discussion followed among the court and counsel about what evidence was relevant to punishment under the applicable statute.

Defense counsel argued that "who Emmitt Taylor is is certainly a relevant issue." Responding to the court's question, "What do you propose to have him testify to," defense counsel responded, "About his life." The court interjected, "Life story?" and counsel responded, "Yes."

The court ruled that evidence "just relating the whole story" was inadmissible and not relevant to sentencing. After defense counsel said, "Note my objection, Your Honor," the court stated: "Now, the statute that permits relevant and admissible evidence from the Defendant on the sentencing phase of the case

7

is limited to that, and I don't want to limit you anymore than that; but it does not permit just a complete open door telling of everything."  Defense counsel responded, "All right, Your Honor."

The sentencing phase continued with the defendant testifying that he was 17 years of age at the time of the armed robbery conviction and that he pled guilty to the narcotics charge because he was told it "was a juvenile matter and would be sealed."  Responding to further questions, defendant testified that he had completed the 11th grade in school, and that he had worked as a gardener, a cook, and at a fish market.

The jury fixed defendant's punishment to confinement in the penitentiary for 18 years on each of the conspiracy and distribution charges and to confinement for 20 years and an $80,000 fine on the transporting charge.  After the jury was discharged, the trial court granted defendant's request for a presentence report.

Six days after the jury had been discharged, the trial court granted defendant's request, made the day after trial, to have inserted in the record a proffer of testimony.  Stating that the trial court's ruling on evidence dealing with punishment was "overly narrow," defense counsel offered "some proof of what my client would have testified to."

During the post-trial hearing, defendant testified, for example, that when he was age nine, his father was robbed and killed; that he had no "male role models growing up"; that his mother is a heavy drug user; that his younger half-brother was killed by gunshots after an argument with his assailants; that he had no fixed home prior to coming to Virginia; and that he received no "instruction as to discipline" from his family.

Following argument of counsel, the trial court made two rulings in denying what it treated as a motion to "reopen the case" to permit presentation of additional evidence. First, the court ruled that the proffer was untimely. The court stated that "the proffer should be made at the moment of the exclusion in order to give the trial court the opportunity to admit the evidence in the event its ruling to exclude would be deemed to be in error." The court continued: "However, here, the motion that is being made now is not timely. And that is one of the reasons . . . assigned for its denial." Second, the trial court ruled the evidence presented in the proffer was not relevant to sentencing.

In judgments of conviction entered in June 1996, the trial court suspended execution of the conspiracy and distribution sentences and imposed the transporting sentence.

Upon appeal, a panel of the Court of Appeals, in an unpublished opinion dated the same day as the Shifflett en banc

9

opinion, reversed the trial court judgments and remanded for a resentencing hearing. Reciting only the facts presented during the proffer, ruled untimely by the trial court, the Court of Appeals said the case was controlled by the Shifflett en banc decision. The court held: "The excluded evidence in this case clearly was relevant to appellant's background and family situation at the time of the earlier conviction and was also probative of his current situation." We awarded the Commonwealth this appeal from that judgment of the Court of Appeals.

The crucial question in these appeals is what did the General Assembly mean when it provided in Code § 19.2-295.1 that during the punishment phase of a bifurcated noncapital jury trial, where the defendant has been found guilty, "the defendant may introduce relevant . . . evidence related to punishment"? This statute was enacted in 1994 when Virginia changed the procedure in such cases from unitary to bifurcated trials. See Acts 1994, ch. 828, 860, 881.

The law extant in the Commonwealth in 1994 relating to punishment in felony cases included the provisions of Code § 19.2-264.4(B), dealing with capital murder cases, and the decision in Coppola v. Commonwealth, 220 Va. 243, 257 S.E.2d 797 (1979), interpreting that statute. When Coppola was decided, as now, the statute provided that in capital murder cases tried by

jury, "evidence may be presented as to any matter which the court deems relevant to sentence." The statute goes on to provide that evidence that may be "admissible, subject to the rules of evidence governing admissibility," may include certain facts. Those are "circumstances surrounding the offense, the history and background of the defendant, and any other facts in mitigation of the offense."

Continuing, the statute provided that facts in mitigation may include, but shall not be limited to, the following: "(i) The defendant has no significant history of prior criminal activity, or (ii) the capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance or (iii) the victim was a participant in the defendant's conduct or consented to the act, or (iv) at the time of the commission of the capital felony, the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was significantly impaired; or (v) the age of the defendant at the time of the commission of the capital offense."

In Coppola, a capital murder prosecution tried by jury, the defendant complained the trial court erroneously excluded the proffered testimony of his former wife about the adverse effect upon their two young sons of defendant's arrest and prosecution. In finding no error, the Court said "discretion is vested in the

trial court to determine, subject to the rules of evidence governing admissibility, the evidence which may be adduced in mitigation of the offense." Coppola, 220 Va. at 253, 257 S.E.2d at 804.

The Court stated that the proffered evidence "is irrelevant on the issue of mitigation. It is not analogous to any of the evidence specifically approved in the statute. The kind of evidence therein contemplated bears upon the record of the defendant and the atrociousness of his crime. Evidence of a good previous record, and extenuating circumstances tending to explain, but not excuse, his commission of the crime, is admissible mitigating evidence . . . . But the effect of his incarceration upon relatives is not a mitigating circumstance for the jury to consider." Id. at 253-54, 257 S.E.2d at 804.

Against this background, which delineated the types of factors considered "relevant" in capital cases, the General Assembly crafted the statute in issue dealing with noncapital cases. The same standard, relevant admissible evidence related to punishment, was included. We perceive no sound reason why the factors that may be considered by a jury in capital murder cases should not likewise be available for consideration by a jury in noncapital cases under § 19.2-295.1. The goal of having an informed jury assess appropriate punishment should be no less essential merely because a noncapital offense is involved.

But this is not a one-way street extending only in the defendant's direction. The statute also permits the Commonwealth to introduce "relevant, admissible evidence in rebuttal" to that offered by the defendant.

Therefore, we hold that a trial court, in determining what evidence is relevant to punishment under Code § 19.2-295.1 may be guided in the exercise of its discretion, subject to the rules of evidence governing admissibility, by the factors set forth in Code § 19.2-264.4(B), as interpreted in Coppola. The kind of evidence contemplated by § 19.2-295.1 bears upon the record of the defendant and the nature of his crime. Evidence of a good previous record, and extenuating circumstances tending to explain, but not excuse, the commission of the noncapital crime is admissible mitigating evidence.[*] And, a trial court's discretionary ruling on this issue should not be disturbed on appeal absent a clear abuse of discretion. Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986).

---

[*] In support of his contention that § 19.2-295.1 should be interpreted in a restrictive manner, the Attorney General has advised us that the 1995 General Assembly refused to enact House Bill No. 2212, which would have added language to the statute specifically permitting introduction of evidence about "the history and background of the defendant and any other facts in mitigation or aggravation of the offense." We are not persuaded by this information; the legislature may well have determined that such amendment was unnecessary because the statutory and case law already so provided.

We shall now apply the foregoing principles to the present cases. Initially, we observe that an appellate court ought to decide cases based on the record made in the court below. The appellate court, in fairness to the trial judge, should not recast the evidence and put a different twist on a question that is at odds with the question presented to the trial court.

Shifflett is an example of this incorrect technique. The issue presented to the trial court by the defendant, as we have demonstrated in our summary of the record, was whether he was entitled to adduce testimony concerning the impact of his incarceration upon his family and his employment. Yet, the Court of Appeals said the girlfriend's testimony was offered to prove "that Shifflett was a responsible father who worked earnestly to provide for his children." Shifflett, 26 Va. App. at 261, 494 S.E.2d at 166. Also, the Court of Appeals said the employer's testimony was offered to show defendant's "character and propensities." Id. at 260, 494 S.E.2d at 166. Neither of these bases for admission of the girlfriend's and the employer's testimony was urged upon the trial court prior to submission of the case to the jury to assess punishment, and we shall not use those grounds to decide this appeal.

Instead, we hold that the trial court, consistent with Coppola, did not clearly abuse its discretion by refusing to allow evidence concerning the impact of defendant's

14

incarceration upon his family and his employment, and the Court of Appeals erred in ruling to the contrary.

The Court of Appeals' decision in Taylor presents a similar problem. It addressed exclusively the facts presented in the proffer, which the trial court explicitly refused to consider because it was untimely. The fact that the trial court, in an alternative ruling, may have erred by deciding the proffered material was not relevant is beside the point. The record made in the trial court, before defendant's sentencing was presented to the jury, was a request by defendant to adduce evidence about his "life story" that amounted to "a complete open door telling of everything."

Yet, the Court of Appeals did not address this request made by defendant before the jury retired. Rather, the appellate court said the proffered evidence "clearly was relevant to appellant's background and family situation." We shall not use the proffered evidence to decide this appeal.

We cannot say that the trial court clearly abused its discretion by refusing to admit evidence about the defendant's life history when the defendant made a broad, unrestricted, and nonparticularized request for "just relating the whole story" and for "just a complete open door telling of everything," and the Court of Appeals erred in ruling to the contrary.

Consequently, we will reverse the judgment of the Court of Appeals in Shifflett, and will enter final judgment here reinstating the sentencing order of the Circuit Court of Albemarle County.  Likewise, we will reverse the judgment of the Court of Appeals in Taylor, and will enter final judgment here reinstating the sentencing orders of the Circuit Court of Arlington County.

Record No. 980187 — Reversed and final judgment.
Record No. 980188 — Reversed and final judgment.

16