COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Bumgardner
Argued at Salem, Virginia


GROVER F. HOSTETTER, JR.
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2378-98-3          JUDGE JAMES W. BENTON, JR.
                                         FEBRUARY 15, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
                   George E. Honts, III, Judge

          Ross S. Haine, Assistant Public Defender, for
          appellant.

          Richard B. Smith, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     A jury convicted Grover F. Hostetter, Jr., of driving under

the influence of alcohol and two counts of involuntary

manslaughter.  He contends the trial judge violated Code

§ 19.2-295.1 and constitutional due process protections by denying

him the right to present at the sentencing proceeding relevant

mitigating evidence.  We affirm the convictions.

                               I.

     The evidence at trial proved that Hostetter was driving a

truck south on Route 11 a little faster than fifty miles per hour.

The truck went onto the right shoulder of the southbound lane,

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

came back into the southbound lane, and slid sideways into the northbound lane of the three-lane highway.  Hostetter's truck struck a northbound car, killing the car's driver and her sister, a passenger.

Hostetter did not have a driver's license.  The evidence proved that a strong odor of alcohol emanated from Hostetter's person and that empty and full beer cans were found at the scene among the debris.  When hospitalized after the accident, Hostetter's blood alcohol level was .22 to .24% by weight by volume.

The jury convicted Hostetter of two counts of involuntary manslaughter, which were lesser-included offenses of the indicted offenses of aggravated involuntary manslaughter, and of driving under the influence of alcohol.  Through evidence presented at the punishment phase pursuant to Code § 19.2-295.1, the Commonwealth proved Hostetter's prior criminal record.  It established that Hostetter had been convicted of driving under the influence of alcohol, destroying a motor vehicle, obstruction of justice by threat of force, writing two checks on accounts with insufficient funds, using obscene language over a telephone, driving a motor vehicle after suspension of his driving privilege, and three counts of assault and battery.

In mitigation, Hostetter proved his school record.  In addition, Dr. Elyce Pike provided expert testimony on Hostetter's limited mental capacity.  She testified that Hostetter was mildly

-

retarded with an I.Q. of sixty and a corresponding mental age of seven or eight and that a person with this level of mental retardation would be incapable of abstract thinking or problem solving.  She told the jury that such a person cannot inhibit behaviors, would be unable to control alcohol consumption, would be incapable of drinking responsibly, would never be able to pass the written test to obtain a driver's license, and would have diminished driving ability.

Dr. Pike also testified that people with Hostetter's limited mental capacity tend to mimic as a survival mechanism.  She testified that "they don't want to appear mentally retarded, but, in some of the examinations, where you have . . . social situations . . . [these] people have a very, very limited ability to know what's going on.  And that's what [Hostetter's examination] demonstrated."

Cathy Davis, a school psychologist and director of education for a public school system, testified as an expert in special education.  Consistent with Dr. Pike's testimony, Davis described the limitations of people with Hostetter's mental capacities.  She described their difficulties with controlling alcohol consumption, writing checks, and everyday living skills.

Hostetter submitted a letter from a community service board detailing his participation after the accident in a substance abuse program.  Hostetter had attended 20 out of 21 sessions, with his one absence being excused.  The letter reported that

-

"Hostetter has been a very quiet and attentive member of the therapy program. He just recently verbally acknowledged his alcoholism, and has done so on a regular basis since." The letter also stated that, "when pressed, [Hostetter] will acknowledge that his alcohol abuse contributed to the deaths of two people."

A manager at an automobile dealership testified that Hostetter had worked for him two years cleaning the facilities and washing cars. He testified that Hostetter had performed his job well, but needed help with "[r]eading directions, things like that."

Anthony Ruley, who had been co-habiting with Hostetter's sister for the previous 21 years, testified that he had known Hostetter for that period and that Hostetter had a "real hard" life. When Ruley testified that Hostetter's father threw beer at Hostetter and shot him, the prosecutor objected that the testimony was irrelevant. The trial judge sustained the objection "to that sort of detail." The trial judge similarly sustained an objection to Ruley's testimony concerning Hostetter's parents' abuse of alcohol. Ruley then testified that during an argument Hostetter's father shot Hostetter in the back. He further testified that Hostetter "was a good boy, he's had a hard life."

In rebuttal, the prosecutor presented the testimony of the brother, nephew, and sister-in-law of the two dead sisters. Each of these witnesses described the sisters' lives and the impact of their deaths on the family. William Reulein testified that the

-

decedents were his only sisters and that their parents had died when he was seventeen, leaving only the three of them.  He described his sisters' adult lives and the impact of their deaths on him and his family.

Reulein's son described his first childhood memories of his aunts, and he testified concerning the impact of their deaths on him, his parents, and his children.  Reulein's wife testified concerning the impact on her life of the death of her sisters-in-law.  She described one of them as her best friend.

Before instructing the jury to consider Hostetter's sentence, the trial judge permitted Hostetter's counsel to proffer Ruley's expected testimony.  Ruley said that Hostetter "had a terrible life."  When Hostetter was young, his father "[threw] beer on him, kick[ed] him in the butt, many, many times, [and ran] him out of the house."  Other uncles did the same to Hostetter.  He testified that Hostetter "suck[ed] his fingers until he was about thirteen or fourteen years old, [until] he'd have sores around his face."  He further testified that Hostetter's family consumed a lot of alcohol and treated Hostetter so badly when they were intoxicated that "it was just over the boundaries."  He said that Hostetter's father "basically treated him like a dog all his life."  The prosecutor objected on the ground of hearsay to Ruley's testimony that, when Hostetter was eight or nine, his aunt and uncle tied him to a tree in a cemetery and left him for more than an hour.

-

In support of the proffer, Hostetter's counsel argued as follows:

> Your Honor, I think there's, part of the problem here is all the victim impact testimony comes in, explaining the impact of all these events on the victims' families, and going into great detail, in describing who the people were, or who the victims were, in this case, they're humanized, they're brought in from children to adulthood, and the jury's allowed to hear all that evidence as, as to who the victims are as people in this case, what we are trying to do, is present some evidence as to who the defendant is in this case, his life, his life history, what kind of person he is, what kind of background he comes from, what the jury had now, is this view of the victims and nothing from the defendant, so, so there's a confrontation issue here. . . .

The jury recommended a sentence of twelve months in jail for driving under the influence of alcohol and ten years on each count of involuntary manslaughter. The trial judge imposed those sentences and made the twelve month sentence concurrent with the ten year sentences for a total of twenty years.

## II.

In pertinent part, Code § 19.2-295.1 provides that in the "proceeding limited to the ascertainment of punishment . . . [, after] the Commonwealth has introduced . . . evidence of prior convictions, . . . the defendant may introduce relevant, admissible evidence related to punishment." Applying this statute, the Supreme Court ruled as follows:

> [W]e hold that a trial court, in determining what evidence is relevant to punishment

-

> under Code § 19.2-295.1 may be guided in the exercise of its discretion, subject to the rules of evidence governing admissibility, by the factors set forth in Code § 19.2-264.4(B), as interpreted in Coppola [v. Commonwealth, 220 Va. 243, 257 S.E.2d 797 (1979)]. The kind of evidence contemplated by [Code] § 19.2-295.1 bears upon the record of the defendant and the nature of his crime. Evidence of a good previous record, and extenuating circumstances tending to explain, but not excuse, the commission of the noncapital crime is admissible mitigating evidence. And, a trial court's discretionary ruling on this issue should not be disturbed on appeal absent a clear abuse of discretion.

Commonwealth v. Shifflett, 257 Va. 34, 44, 510 S.E.2d 232, 236 (1999) (footnote omitted).

Assuming without deciding that the evidence proffered by Hostetter was admissible, we hold that the error in excluding it was harmless. The defense proved extensive facts concerning Hostetter's mental deficiencies. In addition, Ruley testified that Hostetter's life had been "[r]eal hard," that Hostetter lived with his mother "practically all his life," that Hostetter's father had shot him in the back and threw beer cans at him, and that Hostetter "was a good boy, he's had a hard life." In addition, the jurors were aware of Hostetter's present and past crimes.

Given this evidence, it cannot reasonably be said that the jurors' verdict would have been different if they had also known that Hostetter's father and uncles had regularly thrown beer on him, kicked, and hit him. See Lavinder v. Commonwealth, 12 Va.

-

App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (holding that error is harmless when we can conclude "had the error not occurred, the verdict would have been the same").  Moreover, the introduction of evidence that Hostetter still sucked his thumb at age fourteen and was exposed to excessive alcohol consumption in the family would not have added any additional persuasive value to Hostetter's evidence.  We note that Hostetter's expert witness testified concerning his limited mental capacity and his inability to control alcohol consumption or to drink responsibly.  We cannot conclude that the verdict would have been affected by testimony tending to prove that these conditions had a genesis in his family life in addition to his mental retardation.  Clearly, evidence was presented to the jury that Hostetter's problems flowed from extenuating circumstances.

Accordingly, we affirm the convictions.

<u>Affirmed</u>.