COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Fulton and White

EMILY MICHELLE RACE

v.     Record No. 0691-22-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
DECEMBER 29, 2022

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
James E. Plowman, Jr., Judge

(Paul D. Fore, Senior Trial Attorney; Office of the Public Defender,
on briefs), for appellant.

(Jason S. Miyares, Attorney General; Tanner M. Russo, Assistant
Attorney General, on brief), for appellee.

Upon her guilty pleas, the trial court convicted Emily Michelle Race ("appellant") for

first-degree murder, in violation of Code § 18.2-32, and conspiracy to commit robbery, in

violation of Code §§ 18.2-22 and -58. On appeal, she argues that the trial court erred in denying

her most recently filed motion for reconsideration of sentence. After examining the briefs and

record in this case, the panel unanimously holds that oral argument is unnecessary because "the

dispositive issue" in this appeal has been "authoritatively decided, and the appellant has not

argued that the case law should be overturned, extended, modified, or reversed." Code

§ 17.1-403(ii)(b); Rule 5A:27(b). Accordingly, we affirm the trial court's judgment.

I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v.*

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

*Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)).

At appellant's sentencing hearing,[1] Miguel Sosa testified that during 2019 and 2020 he shared an apartment with his brother, Fabian Sosa, and Hunter Rutherford. Miguel stated that for approximately one month during 2019, appellant lived with them in the apartment because she had nowhere else to go. While living there, appellant regularly saw Miguel and Rutherford in possession of various drugs and significant amounts of cash. She also asked Miguel to assist her in a scheme to beat up and rob unsuspecting men she met through social media. Miguel refused to participate in appellant's scheme and forced her to move out, which upset appellant.

In early December 2019, appellant moved into a townhouse with five men who had recently relocated from Detroit. On December 17, 2019, the townhouse occupants arranged a drug purchase, but instead of buying the drugs, they attacked the two dealers and robbed them of marijuana and two nine-millimeter pistols. That same month, appellant repeatedly told the townhouse occupants about Miguel and his regular inventory of drugs and cash.

On January 7, 2020, appellant and some of the townhouse occupants developed a plan to rob Miguel. They put on dark clothing and armed themselves with the stolen guns. Appellant contacted an acquaintance and asked him to drive the group to Miguel's apartment upon her promise to spend time with the acquaintance at a motel.

Appellant texted Miguel in the early morning hours of January 8, 2020, and asked to visit him. When she arrived at the apartment, Miguel let appellant in, closed the door, and locked it. After Miguel walked away, appellant unlocked the door and admitted three of the Detroit men, who were armed and wearing masks. While demanding drugs and money, the gunmen shot

---

[1] In addition to testimony from the sentencing hearing, this background section incorporates information from the Commonwealth's proffer of facts submitted in connection with appellant's plea agreement.

Miguel seven times, including in the head; Miguel was rendered blind as a result. The assailants also went to Fabian's room and shot and killed him in his sleep. The assailants shot Rutherford four times. Appellant fled with the gunmen afterward.

Appellant's mother, Tiffany Sheppard, testified at the sentencing hearing that appellant had been teased as a child and had been shy and timid. Appellant had gained confidence through an association with a schoolteacher who encouraged her to sing. However, appellant continued to "struggle[] with self-confidence" and "also had a lot of anxiety." She began to use marijuana and was placed on probation, so Sheppard and appellant moved from Florida to Virginia to make a fresh start. Appellant had successfully completed probation, graduated from high school, and helped the family care for an elderly relative with dementia. However, appellant had resumed using marijuana and had cut off contact with her family. Sheppard testified that, since appellant's incarceration, she had expressed remorse and regret for her involvement in the incident at the apartment.

David Race, appellant's father, submitted a letter to the court describing appellant's strong family upbringing and her kind and tender nature with both people and animals. He stated that appellant was remorseful about the violent incident, which was inconsistent with her peaceful character, and, her father believed, a result of manipulation by the men who accompanied her to the apartment.

Appellant's presentence report was made a part of the record at the sentencing hearing. According to the report, Sheppard told probation officials that appellant "was involved in counseling during her formative years to address her self-esteem issues as well as her anxiety and depression which were all directly correlated to each other." Appellant herself stated to probation officials that "she suffers with some depression and anxiety" and was "presently prescribed Buspar for anxiety." Both appellant and her mother related that prior to relocating to

Virginia, appellant "was involved in mental health services . . . in Port Orange, Florida to address self-esteem and anxiety issues" and "received services with Nemours Children['s] Health System in Lake Mary, Florida for the same issues." After relocating to the Commonwealth, appellant "received [therapy] services through the National Counseling Group."

The trial court imposed a life sentence for the murder conviction and ten years' imprisonment for the conspiracy conviction. In its ruling from the bench, the court explained that it had considered all the mitigating evidence and surrounding circumstances, as well as the fact that appellant orchestrated the incident that caused death, injury, and egregious harm to the victims and their families.

After appellant noted an appeal of her convictions to this Court, the trial court granted her motion to stay her transfer to the Virginia Department of Corrections ("the Department") until August 31, 2021. On June 14, 2021, appellant filed in the trial court a motion for reconsideration and modification of her sentence pursuant to Code § 19.2-303. She argued that she suffers from anxiety and had received treatment for it and that her father had information he wished to submit in addition to the information contained in the letter he provided at sentencing. By order entered June 16, 2021, the trial court denied the motion for reconsideration "as an appeal was noted on May 11, 2021." By per curiam order, this Court dismissed the portion of the appeal challenging the trial court's denial of appellant's motion for reconsideration of sentence and denied the portion of the appeal challenging the trial court's imposition of sentence. *See Race v. Commonwealth*, No. 0500-21-4 (Va. Ct. App. Sept. 16, 2021).

On March 22, 2022, appellant filed a second motion for reconsideration of her sentence pursuant to Code § 19.2-303.[2] As in her first motion, appellant maintained that she suffers from

_____

[2] In her motion, appellant asserted that she had been transferred to the Department on March 9, 2022.

- 4 -

anxiety and has been treated for it and that her father had evidence to that effect that had not been submitted at sentencing. An attached letter from appellant's father asserted that she lacked confidence and self-esteem and had previously "exhibit[ed] signs of anxiety and depression." The letter also stated that "on at least one occasion, [appellant] voluntarily sought psychiatric help and needed both mine and her mother's permission for treatment." Appellant also contended in her motion that reconsideration of her sentence was in the public interest.

On April 6, 2022, the trial court denied appellant's motion without a hearing. This appeal followed.

## II. ANALYSIS

Appellant argues that the trial court erred in denying her March 2022 motion to reconsider her sentence.

"Motions to . . . reconsider a prior ruling involve matters wholly in the discretion of the trial court." *Thomas v. Commonwealth*, 62 Va. App. 104, 109 (2013). "This standard requires the Court to 'show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance.'" *Commonwealth v. Davis*, 73 Va. App. 711, 717 (2021) (alteration in original) (quoting *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021)). Accordingly, "[i]n reviewing whether the trial judge abused his exercise of discretion in sentencing a defendant, we do not substitute our judgment for that of the trial judge." *Baldwin v. Commonwealth*, 43 Va. App. 415, 426 (2004). A trial court commits an abuse of discretion when

> (1) it fails to consider a relevant factor that should have been given significant weight; (2) it considers and gives significant weight to an irrelevant or improper factor; or (3) it considers all proper factors, and no improper ones, but, in weighing those factors, the court commits a clear error in judgment.

*Barnes v. Commonwealth*, 72 Va. App. 160, 167 (2020).

- 5 -

"All final judgments, orders, and decrees . . . remain under the control of the trial court and may be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." Rule 1:1(a). "Expiration of the twenty-one day time limitation divests the trial court of jurisdiction." *Stokes v. Commonwealth*, 61 Va. App. 388, 392 (2013) (quoting *Ziats v. Commonwealth*, 42 Va. App. 133, 138 (2003)). As one of the limited exceptions to Rule 1:1(a), Code § 19.2-303 provides:

> If a person has been sentenced for a felony to the Department of Corrections (the Department), the court that heard the case, if it appears compatible with the public interest and there are circumstances in mitigation of the offense, may, at any time before the person is transferred to the Department, or within 60 days of such transfer, suspend or otherwise modify the unserved portion of such a sentence.

Currently, "Code § 19.2-303 gives trial courts jurisdiction over 'all felony convictions'" before the defendant is sent to the Department or within 60 days of transfer. *Holland v. Commonwealth*, 62 Va. App. 445, 455 (2013) (quoting *Wilson v. Commonwealth*, 54 Va. App. 631, 640 (2009)).

"In order for a trial court to modify a sentence pursuant to Code § 19.2-303, the defendant must present the trial court with 'circumstances in mitigation of the offense.'" *Wilson*, 54 Va. App. at 641 (quoting Code § 19.2-303). Generally, "mitigating circumstances include '[e]vidence of a good previous record, and extenuating circumstances tending to explain, but not excuse, the commission of' the crime." *Id.* (quoting *Commonwealth v. Shifflett*, 257 Va. 34, 44 (1999)). A mitigating circumstance is "a fact or situation that does not bear on the question of the defendant's guilt, but that is considered by the court in imposing punishment." *Id.* (quoting *Black's Law Dictionary* 260 (8th ed. 2004)).

The burden of proving that modification of a sentence is "compatible with the public interest and there are circumstances in mitigation of the offense" is upon the defendant as the

moving party. *Harris v. Commonwealth*, 57 Va. App. 205, 212 (2010) (quoting Code § 19.2-303). Moreover, "[a]llegations in a [Code § 19.2-303] motion are allegations only and not evidence." *Holland*, 62 Va. App. at 457.

Appellant contends that "[t]here was no evidence presented at sentencing about [her] anxiety, and had it been presented this would have been mitigating of her offense" and that in her motion, "she told the trial court that she suffers from [it] and had been in treatment for it, and her father said that she [had] sought psychiatric help" for anxiety. She argues that by denying her motion, the trial court abused its discretion by "fail[ing] to give this factor significant weight." Appellant also contends that it was in the public interest for the trial court to have modified her sentence, because "when someone has been sentenced to life [imprisonment], public interest would be served to know that judges are taking into account a person's mental health history."

Contrary to appellant's argument that there was "no evidence" of her anxiety presented at sentencing, her mother testified at the sentencing hearing that appellant "had a lot of anxiety" while she was in school. Additionally, during the hearing, the trial court incorporated appellant's presentence report into the record. As noted above, that report contained information, obtained from both appellant and her mother, that indicated appellant had suffered from anxiety, taken medication for it, and received mental health services for the condition. Thus, the allegations about her anxiety and treatment contained in appellant's motion and her father's letter were duplicative of other evidence of mitigating circumstances that was before the trial court at sentencing. When imposing sentence, the trial court made clear that it had considered all the mitigating evidence and surrounding circumstances in the case. Nothing in the record before us, or in appellant's argument on briefs, persuades us that the trial court failed to consider or give appropriate weight to the evidence of anxiety, as contended by appellant. Accordingly, we reject appellant's argument that the trial court abused its discretion in sentencing appellant. Further,

because we conclude that the trial court took appellant's anxiety and related mental health treatment into account at sentencing, we reject appellant's argument that the public interest was not served in this case and necessitates a reconsideration of sentence.

## III. CONCLUSION

For the foregoing reasons, we find that the trial court did not abuse its discretion in denying appellant's motion for reconsideration of her sentence. Accordingly, we affirm the trial court's judgment.

*Affirmed.*