COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, AtLee and Malveaux
Argued at Richmond, Virginia

GREGORY FULLER

v.      Record No. 0796-23-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE MARY BENNETT MALVEAUX
JUNE 25, 2024

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
M. Duncan Minton, Jr., Judge

(Gregory R. Sheldon; Bain Sheldon, on brief), for appellant.
Appellant submitting on brief.

S.K. Hallie Hovey-Murray, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Gregory Fuller ("appellant") was convicted in a bench trial of failure to register or

reregister as a sex offender, in violation of Code § 18.2-472.1. On appeal, he argues the trial

court erred by finding that he knowingly failed to register or reregister when he timely submitted

incomplete reregistration documents. For the following reasons, we affirm the trial court.

I. BACKGROUND

"'In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party [below].' Accordingly, we regard

as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably

be drawn from that evidence." *Meade v. Commonwealth*, 74 Va. App. 796, 802 (2022) (citation

omitted) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

Appellant was convicted of aggravated sexual battery in 2011. Pursuant to his conviction and the Virginia Sex Offender and Crimes Against Minors Registry Act, Code §§ 9.1-900 to -923, appellant registered as a sex offender with the Virginia State Police ("VSP").[1] Based on the particular nature of appellant's offense, he was required to reregister and verify his registration information with VSP every 90 days.[2]

For each reregistration and verification, appellant had to complete a standard VSP form. The form required that appellant obtain and submit fresh thumbprints, provide his current residential and mailing addresses, and sign and date the form. By signing the document, appellant "certif[ied] the information provided on this . . . form is complete and accurate." The form also stated that "accurate completion and timely submission . . . fulfills your obligation of re-registering and verifying your address with [VSP]," and noted that "FAILURE TO COMPLY . . . IS PUNISHABLE AS PROVIDED IN . . . CODE [§] 18.2-472.1."

Appellant completed and timely submitted his reregistration and verification forms every 90 days for nearly a decade, including during the COVID-19 pandemic, when VSP informed registrants that it would temporarily permit forms to be filed electronically and without

---

[1] *See* Code §§ 9.1-901(A) and -902 (requiring registration of all persons convicted of aggravated sexual battery); Code § 19.2-390.1 (requiring the VSP to "keep and maintain . . . [the] Registry"); *Harris v. Commonwealth*, 53 Va. App. 494, 498 (2009) (noting the "statutory duty" of the VSP "to investigate a failure to register or re-register").

[2] Prior to July 1, 2020, aggravated sexual battery was classified as a "[s]exually violent offense" under Code § 9.1-902 of the Virginia Sex Offender and Crimes Against Minors Registry Act. *See* 2019 Va. Acts ch. 617. Effective July 1, 2020, the statute was amended to adopt a tiered offense structure similar to that employed in some federal criminal statutes, and aggravated sexual battery was reclassified as a "Tier III offense." *See* 2020 Va. Acts ch. 829; *cf.* 34 U.S.C. § 20911. At the same time, Code § 9.1-904, which previously provided that all persons required to register "shall reregister with the [VSP]" according to certain prescribed schedules, was amended to state that such persons must "verify their registration information with the [VSP]." *See* 2020 Va. Acts ch. 829. Under both versions of Code § 9.1-904, persons required to register after conviction for aggravated sexual battery were required to "reregister" or "verify their registration" every 90 days.

thumbprints. Those pandemic accommodations ended on July 31, 2021, and appellant timely submitted a form that was accepted in August 2021. But for the reregistration and verification due by November 15, 2021, appellant submitted a form to VSP that was deficient in several respects. Appellant did not include his complete residential and mailing addresses, omitting the city, state, and zip code from each; did not provide thumbprints; and typed, rather than signed, his name.

Notified of these deficiencies, Trooper Michael King, assigned to the VSP Sex Offender Registry, began an investigation. King testified that VSP informed him they would accept appellant's November 2021 form, "even though it wasn't filled out properly"; King, however, was to meet with appellant "and explain to him from this point on everything has to be filled out." Shortly after 11:00 a.m. on December 6, 2021, King met with appellant at his home. King reviewed with appellant the deficiencies in his November 2021 form and made clear to him that his forms "need[ed] to be filled out properly, and he need[ed] to do his thumbprints and sign and date it and send it . . . in." Appellant apologized to King and told him he would "complete the form correctly next time."

Appellant's next reregistration and verification form was due by February 15, 2022. King testified that despite his conversation with appellant, appellant's February 2022 form "was pretty much the same deal." Appellant omitted the city, state, and zip code from his mailing address, and for his residential address, he provided only quotation marks. He also failed to include thumbprints on the form, typed the date onto the form, and typed his name into the signature blank rather than signing there. Noting especially the importance of the thumbprint requirement, because VSP uses the thumbprints to verify a registrant's identity, King testified that VSP did not accept appellant's February 2022 form. King arrested appellant for knowingly

failing to register, reregister, or verify his registration information or knowingly providing materially false information to the registry, in violation of Code § 18.2-472.1.

Appellant testified at trial. He stated that when King came to speak with him on December 6, 2021, it was 7:30 a.m. and appellant had "just woken up," so he "wasn't totally there" and could not "remember [the visit] exactly." Asked why he had substituted punctuation marks for his complete residential address on the February 2022 form, appellant explained that "that's just a me thing on the computer. . . . If you have to enter the same thing twice you enter quotation marks." On cross-examination, appellant was asked about King's December 2021 visit and whether King explained to appellant that he had to include thumbprints and a signature on his form. Appellant responded, "[King] didn't explain any of that," at which point the trial court stated, "I thought a minute ago you didn't remember what [King] talked to you about because you were so sleepy." Appellant replied, "[t]hat's very true. But I'm speaking from what I know to be true about the form and how things are conducted and reality and common sense."

In closing argument, counsel for appellant acknowledged that "there was initially some confusion about filing the form and signing it and putting thumbprints on it." She argued, however, that "[i]t was not that [appellant] didn't file it. It was not that he didn't make the attempt to re-register and to do the verification of where he was living and all the other verifications." Appellant "did that online to the best of his ability . . . still thinking that he had done this correctly." Counsel for appellant maintained that "confusion after the Covid thing" had created a "glitch . . . during that period of time that [appellant] could have become confused."

The trial court convicted appellant. It stated it did not believe appellant's testimony that he was too sleepy to "know what [King] said." It also noted appellant's responsibility to satisfy the requirements of the registry and found that appellant "didn't do that." After King's visit, the

trial court found, appellant had "just sent in a form that I don't know why you thought it was going to be sufficient.  It's not even close."

This appeal followed.

## II.  ANALYSIS

Appellant argues that the trial court erred in finding sufficient evidence to prove he knowingly failed to register or reregister with the VSP, "when he timely submitted his re-registration forms which were deemed to be incomplete."

"When presented with a sufficiency-of-the-evidence challenge in criminal cases, we review the evidence in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Commonwealth v. Barney*, 302 Va. 84, 96 (2023) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)).  "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Tomlin v. Commonwealth*, 302 Va. 356, 361 (2023) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).  "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'  Instead, 'the relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."'" *Washington v. Commonwealth*, 75 Va. App. 606, 615 (2022) (alteration in original) (citation omitted) (first quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020); and then quoting *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016)).  Consequently, "we will not disturb the judgment of [the trial court] unless it is 'plainly wrong or without evidence to support it.'" *Davis v. Commonwealth*, 79 Va. App. 123, 147 (2023) (quoting Code § 8.01-680).  Moreover, it is the trier of fact's "function . . . to determine the credibility of witnesses and the weight afforded the testimony of those witnesses.

This Court does not revisit these determinations on appeal unless reasonable people, 'after weighing the evidence and drawing all just inferences therefrom, could reach [only the contrary] conclusion.'" *Id.* at 148 (second alteration in original) (citation omitted) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)).

Code § 18.2-472.1(B) provides, in pertinent part, that "[a]ny person convicted of a Tier III offense . . . who knowingly fails to register, reregister, or verify his registration information . . . is guilty of a Class 6 felony." In order to prove that "an accused 'knowingly fails to register or reregister [or verify his registration information]' in violation of the statute," the Commonwealth must establish that the accused "has knowledge of the fact that he has a duty to register or reregister [or verify his registration information], but does not do so." *Marshall v. Commonwealth*, 58 Va. App. 210, 215 (2011) (quoting Code § 18.2-472.1(B)).

Appellant acknowledges that when he filed his February 2022 form, "the form was incomplete," but notes that it was nonetheless timely filed. He contends that because a reregistration form was timely filed, the evidence failed to prove a violation of Code § 18.2-472.1(B).

To the extent that appellant's argument on brief is that his mere timely filing of an incomplete form satisfied the statutory reregistration and verification requirement, that argument is not properly before the Court. Appellant did not argue below that simply timely filing a reregistration and verification form, regardless of its deficiencies, is enough to satisfy the requirements of Code § 18.2-472.1(B). Rather, he argued that due to temporary changes in the reregistration and verification procedures during the COVID-19 pandemic, he suffered "confusion" about what was required to complete the form; he then "attempt[ed] to re-register and to do the verification," and did so "to the best of his ability . . . thinking that he had done this correctly." Appellant asserted that his "confusion after the Covid thing" explained the "glitch"

that accounted for his rejected attempt at reregistration and verification. Appellant's argument to the trial court was thus an argument that he lacked the intent to violate Code § 18.2-472.1(B), which goes to the statute's element of "knowing[] fail[ure]" to reregister or verify.

"Procedural-default principles require that the argument asserted on appeal be the same as the contemporaneous argument at trial." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019); *see also* Rule 5A:18 (articulating the contemporaneous objection rule). "Specificity and timeliness undergird the contemporaneous-objection rule, [and] animate its highly practical purpose," *Bethea*, 297 Va. at 743, which is to ensure "that the trial judge would know the particular point being made in time to do something about it," *id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). "Consequently, neither an appellant nor an appellate court should 'put a different twist on a question that is at odds with the question presented to the trial court,'" *id.* at 744 (quoting *Commonwealth v. Shifflett*, 257 Va. 34, 44 (1999)), and "this Court 'will not consider an argument on appeal [that] was not presented to the trial court,'"[3] *Clark v. Commonwealth*, 78 Va. App. 726, 767 (2023) (alteration in original) (quoting *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004)). Accordingly, we do not consider any argument that the mere timely filing of an incomplete form satisfies the statutory reregistration and verification requirement of Code § 18.2-472.1(B). Rather, we consider appellant's argument only so far as it encompasses the statute's knowledge element.

In *Marshall v. Commonwealth*, 58 Va. App. 210 (2011), this Court considered, as a matter of first impression, the interpretation and application of the term "knowingly" in Code § 18.2-472.1(B). The defendant in *Marshall* had successfully reregistered several times, but

---

[3] Although the contemporaneous objection rule contains exceptions "for good cause shown or to enable this Court to attain the ends of justice," Rule 5A:18, appellant does not invoke those exceptions "and the Court will not apply the exceptions sua sponte," *Burford v. Commonwealth*, 78 Va. App. 170, 184 (2023).

failed to reregister in April 2009 when he was delayed in returning to Virginia from another state. *Id.* at 212-13. The trial court convicted him of violating Code § 18.2-472.1(B), stating from the bench that "[t]here may not have been bad purpose, but [he] didn't register. . . . And he certainly knows that he is supposed to register. . . . [He] had been registering . . . for four months previously." *Id.* at 214. On appeal, the defendant argued that the term "knowingly" in the statute "should be interpreted to require 'specific intent' or 'bad purpose' on the part of the accused in failing to register." *Id.* This Court rejected the argument that Code § 18.2-472.1(B) "requires specific intent or purpose," and instead held "that an accused 'knowingly fails to register or reregister' . . . if he has knowledge of the fact that he has a duty to register or reregister, but does not do so . . . . Code § 18.2-472.1(B) is not a specific intent law."[4] *Id.* at 215.

Appellant's argument at trial was that although his reregistration and verification form was incomplete when he filed it, he had been "confus[ed] about filing the form and signing it and putting thumbprints on it" because of "confusion after the Covid" changes to the filing process. He argued that he was thus not guilty of knowingly failing to register or reregister because he had "attempt[ed] to reregister and to do the verification" to "the best of his ability . . . thinking

---

[4] The Court also noted that its construction of Code § 18.2-472.1(B) promoted "the express purpose of Virginia's Sex Offender and Crimes Against Minors Registry Act," which was to assist law enforcement and others in "'protect[ing] their communities and families from repeat offenders.'" *Marshall*, 58 Va. App. at 217-18 (quoting Code § 9.1-900). Since the statute "incentivizes offenders to register by criminalizing non-compliance, i.e., 'knowingly fail[ing] to register or reregister,'" the "incentive would be significantly diminished" if it were "construed as requiring a specific intent to constitute a violation." *Id.* at 218 (alteration in original) (quoting Code § 18.2-472.1(B)). *See also* Code § 9.1-900 ("The purpose of the . . . Registry . . . shall be to assist the efforts of law-enforcement agencies and others to protect their communities and families from repeat offenders and to protect children from becoming victims of criminal offenders by helping to prevent such individuals from being allowed to work directly with children."); Code § 9.1-920 (providing that the Sex Offender and Crimes Against Minors Registry Act, "being necessary for the welfare of the Commonwealth and its inhabitants, shall be liberally construed to effect [its] purposes").

that he had done [it] correctly." The trial court rejected this argument, and we reject it as well. As this Court noted in *Marshall*, "Code § 18.2-472.1(B) is not a specific intent law," rendering appellant's claim that he acted out of confusion and did not intend to file an inadequate form irrelevant; rather, it was sufficient for appellant to violate the statute if he knew of his duty to reregister and verify his information but did not do so. *Marshall*, 58 Va. App. at 215.

Here, it was uncontested that appellant had knowledge of his duty to reregister and verify his information with the VSP. Based on the evidence presented at trial, a reasonable factfinder could have found that appellant also had knowledge of what was required of him to properly reregister and verify his information. Appellant had successfully reregistered and verified his information every 90 days for nearly a decade prior to November 2021. When VSP introduced temporary changes to the reregistration and verification process during the COVID-19 pandemic, appellant successfully completed several reregistrations and verifications in conformity with those changes. After the temporary changes were rescinded at the end of July 2021, appellant filed a form that was accepted in August 2021. This record of past compliance supports a reasonable inference that appellant knew the requirements for successful reregistration and verification, and was capable of satisfying them. Those requirements, and the penalties for non-compliance, were also communicated to appellant by the text of the forms themselves that he successfully completed over many years. And after his first submission of an incomplete form in November 2021, VSP sent Trooper King to meet with appellant and "explain to him that from this point on everything has to be filled out." Although appellant testified that he did not "remember [King's visit] exactly" because he had "just woken up," and that King "didn't explain any of that," the trial court found appellant's account incredible, and there is no basis in the record for this Court to revisit that credibility determination.

Based on these facts and circumstances, a rational trier of fact could have found that appellant had knowledge of the fact that he has a duty to reregister, but did not do so, despite knowing how to meet his duty by properly completing a reregistration and verification form. *Marshall*, 58 Va. App. at 215. Because a rational trier of fact could have found the necessary elements to convict appellant for knowingly failing to reregister and verify his information with VSP, we hold the trial court did not err as alleged by appellant.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment and uphold appellant's conviction.

*Affirmed.*