COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge AtLee and Senior Judge Humphreys
Argued at Williamsburg, Virginia

PUBLISHED

DEAN ANTON VITASEK

OPINION BY
v.      Record No. 1992-24-1      CHIEF JUDGE MARLA GRAFF DECKER
JANUARY 13, 2026

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Salvatore R. Iaquinto, Judge

Samantha Offutt Thames, Senior Appellate Attorney (Virginia
Indigent Defense Commission, on briefs), for appellant.

Allison M. Mentch, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Dean Anton Vitasek was convicted of eight counts of assault and battery of a law

enforcement officer, two counts of obstruction of justice by threat or force, and one count each of

malicious wounding of a law enforcement officer, possession of a weapon by a convicted felon,

depriving a law enforcement officer of a firearm or stun gun, possession of methamphetamine,

and use of identification documents or information to avoid arrest.[1]  On appeal, he challenges the

sufficiency of the evidence to support three of those convictions—the malicious wounding,

felon-in-possession, and deprivation-of-a-weapon offenses.  He also suggests, in light of his

mitigating evidence, that the trial court abused its discretion by imposing an active sentence of

fourteen years.  We hold the trial court did not err and affirm its judgment.

---

[1] These convictions were for violating Code §§ 18.2-51.1, -57, -57.02, -186.3, -250,
-308.2, and -460.

BACKGROUND[2]

On May 6, 2023, Officer Patrick Matthews of the Virginia Beach Police Department was on routine patrol when he noticed a car with no front license plate. The driver pulled into a convenience store and went inside. After a brief investigation, Matthews determined that the driver, Vitasek, had an active warrant for his arrest.

Officer Matthews and Sergeant Joshua Massel, readily identifiable as law enforcement, approached Vitasek inside the store. Using Vitasek's first name, Officer Matthews said, "Hey, Dean, you have a warrant." Vitasek responded, "Get away[,] . . . I have a gun," and reached for his waistband. The officers tried to "maintain control of" Vitasek's arms to prevent him from drawing a weapon. As the men struggled, Vitasek continued to say he had a gun, and the officers repeatedly told him to "stop resisting" and "get on the . . . ground."

The physical confrontation lasted for about five minutes. During that time, Vitasek briefly disabled Sergeant Massel with a kick to the groin and tried to use a pencil from the nearby lottery kiosk to stab him. Vitasek also reached for Officer Matthews's knife in his tactical vest. He bit Matthews's hand through his glove, breaking the skin. He also bit Matthews's forehead, causing a bruise.

As the fight continued, Matthews and Massel hit Vitasek in the face to prevent him from grabbing Matthews's knife. The blows "opened up a cut" on Vitasek's forehead that bled profusely. He was "enrage[d]" and seemed "abnormally strong," "almost . . . inhuman." Matthews observed that "nothing" he or Sergeant Massel did "seemed to have any effect on"

---

[2] The "appellate court must 'review the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court,' and must 'accord the Commonwealth the benefit of all reasonable inferences deducible from the evidence' in making its determination." *Commonwealth v. Wilkerson*, 304 Va. 92, 100 (2025) (quoting *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024)).

Vitasek. He hit the two officers in the face several times and spit both saliva and blood in their faces.

Before their backup officers arrived, Sergeant Massel fired a taser cartridge at Vitasek, and although the probes connected, Vitasek was immobilized for only a few seconds. Massel fired his second taser cartridge, but Vitasek was still reaching toward his waistband and started to remove the taser probes from his body. Officer Matthews then fired his own taser at Vitasek twice. Once again, the probes connected but "seemed to have no effect on him," and he pulled them out while trying to get up off the floor.

Because both officers had used all of their taser cartridges, Matthews put his knee on Vitasek's midsection and moved the taser toward his abdomen. Matthews's intent was to "initiate a drive stun," which involved placing the taser in direct contact to deliver a focused electrical shock. In response, Vitasek started fighting Matthews over the taser, putting both of his hands on it and trying to wrest it away. According to Matthews, Vitasek "pretty much gained control of [the] taser" and "manipulated it back towards" the officer. Matthews still had one hand on the weapon, but despite his efforts to prevent Vitasek from "turning it," Vitasek did so and tased Matthews in the arm. Matthews then regained control of the taser and threw it toward the back of the store to "get it out of the fight."

Three more officers arrived and intervened in the struggle. Vitasek, who stated during later questioning that he "hate[d]" the police, was "still actively resisting," "fighting" and trying to bite the officers. He never became fully "compliant" but was ultimately subdued and handcuffed. When officers moved Vitasek's hands and handcuffs from the front to the rear of his body, he again fought and tried to bite them.

After the arrest, police found methamphetamine, a smoking device, and syringes in Vitasek's car. They did not find a firearm, and at that point, Vitasek admitted he was unarmed.[3]

Officer Matthews and Sergeant Massel were transported to the hospital as a precaution. In addition to the broken skin from the bite on his hand and bruising from the bite on his forehead, Matthews had lacerations on his nose and ear and bruising on his knees. His injuries took about two weeks to heal.

In a series of video and audio phone conversations from jail, Vitasek admitted he was "fucked up" when he fought with the officers and described the altercation as "like a . . . six-round UFC fight." He also admitted taking an officer's stun gun away from him.

At the close of the Commonwealth's case, Vitasek opted not to present evidence and made a motion to strike. The trial court denied the motion in part and convicted him of the instant offenses.[4] After the preparation of a presentence report and a sentencing hearing, he was sentenced to sixty-five years and thirty-six months, with fifty-one years and thirty-six months suspended, leaving him with an active sentence of fourteen years.

ANALYSIS

I. Sufficiency of the Evidence

Vitasek challenges the sufficiency of the evidence to support three of his convictions. The standard of review for sufficiency challenges is well established. "When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "[T]he judgment of the trial court is

---

[3] The day after Vitasek's arrest, he tried to flee a second time, again fighting, scratching, biting, and spitting at officers.

[4] The trial court granted the motion as to driving after forfeiting one's license and the attempted malicious wounding of Sergeant Massel. It reduced a charge of attempted malicious wounding of Matthews to assaulting and battering him.

presumed correct and will not be disturbed unless it is [']plainly wrong or without evidence to support it.[']'" *Commonwealth v. Wilkerson*, 304 Va. 92, 100 (2025) (first alteration in original) (quoting *Garrick*, 303 Va. at 182).  And a determination regarding the credibility of the witnesses and the weight to be given their testimony is a finding of fact also entitled to deference on appeal under the plainly wrong standard.  *Washington v. Commonwealth*, 75 Va. App. 606, 615-16 (2022).  Appellate review "does not distinguish between direct and circumstantial evidence, as the fact finder itself 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'"  *Garrick*, 303 Va. at 183 (quoting *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017)).

The question on appeal is "whether *any* rational trier of fact could have found the [challenged] elements of the crime beyond a reasonable doubt."  *Cappe v. Commonwealth*, 304 Va. 86, 87 (2025) (per curiam) (emphasis added) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)); *see Commonwealth v. Barney*, 302 Va. 84, 97 (2023).  "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'"  *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)); *see Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022) (observing that this same standard applies to video evidence).

Of course, any related questions of law are reviewed de novo.  *See Bowman v. Commonwealth*, 290 Va. 492, 496 (2015).  Such questions include what elements are required to prove the underlying crime, the meaning of statutory terms defining those elements, and the application of a particular penalty.  *See id.*; *Alston v. Commonwealth*, 274 Va. 759, 764 (2007); *Lopez v. Commonwealth*, 73 Va. App. 70, 77 (2021).

A. Malicious Wounding of a Law Enforcement Officer

Vitasek challenges the proof that he intended to permanently maim, disfigure, disable, or kill Officer Matthews when he bit him, as required to support his conviction for maliciously wounding a law enforcement officer.

Whether a defendant acted with the statutorily required intent is "purely a question of fact." *Commonwealth v. Perkins*, 295 Va. 323, 331 (2018) (per curiam). Under the applicable "standard of review, a 'factfinder may "draw reasonable inferences from basic facts to ultimate facts,"' and those inferences cannot be upended on appeal unless [the appellate court] deem[s] them 'so attenuated that they "push 'into the realm of *non sequitur*.'"'" *Id.* at 332 (quoting *Bowman*, 290 Va. at 500). Put more simply, the appellate court must defer to all "[r]easonable inferences drawn by the factfinder" unless they are plainly wrong. *Wilkerson*, 304 Va. at 100.

Where the "mens rea of [a] crime is an 'intent to maim, disfigure, disable[,] or kill,'" the Commonwealth "need prove only one intent to convict." *Perkins*, 295 Va. at 328-29 (quoting 7 Ronald J. Bacigal, *Virginia Practice Series: Criminal Offenses and Defenses* 47-48 (2017-2018 ed.)). And proof that a "permanent condition" actually resulted is not required. *Id.* at 330 (quoting 7 Bacigal, *supra*, at 48). In other words, a conviction for malicious wounding requires proof only that the defendant "*intend[ed]* to permanently, not . . . temporarily, harm another person." *Id.* (emphasis added) (quoting *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013)).

Intent can be proved with circumstantial evidence such as a defendant's conduct and statements. *See Welch v. Commonwealth*, 79 Va. App. 760, 768 (2024); *Alston v. Commonwealth*, 77 Va. App. 639, 648 (2023). "[I]t is proper for a [fact finder] to consider not only the method by which a victim is wounded, but also the circumstances under which that injury was inflicted . . . ." *Perkins*, 295 Va. at 330 (quoting *Burkeen*, 286 Va. at 260). And conduct and statements that both precede and follow the alleged criminal act can serve as

"relevant circumstantial evidence of [a defendant's] intent" at the time of the act. *See Welch*, 79 Va. App. at 768 (quoting *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011)); *Burkeen*, 286 Va. at 260-61. Further, "'a defendant may act with more than one intent[,]' and 'a specific criminal intent may coexist with a less culpable intent.'" *Diaz v. Commonwealth*, 80 Va. App. 286, 319 n.7 (2024) (quoting *Eberhardt v. Commonwealth*, 74 Va. App. 23, 38-39 (2021)).

Vitasek does not contest that he knew that Matthews and Massel were law enforcement, and he admitted that he "hate[d]" the police. When Matthews called him by name and said, "[Y]ou have a warrant," Vitasek immediately proclaimed that he had a gun. He resisted being handcuffed and struggled to escape. Vitasek said "his hands were on [his] gun" and he would "shoot" and "kill" them if they "didn't let him go." Based on this evidence alone, Vitasek clearly stated a willingness to maim, disfigure, disable, or kill them to escape, even if he did not actually have a gun of his own with which to do so. Vitasek expressly admitted that when the officers opened a bloody gash on his forehead during the fray, "[i]t was on" for him, providing further evidence from which the fact finder could infer that he was willing to do whatever it took to evade capture.

Consistent with Vitasek's actions and statements, Matthews described him as "enrage[d]," "abnormally strong," and "almost . . . inhuman" in how he attacked them. He temporarily disabled Massel with a kick to the groin, stabbed at him with a pencil, and also tried to take Matthews's sheathed knife. He spit saliva and blood on both officers, and he bit Matthews's hand and forehead. Although Matthews was wearing gloves, Vitasek nonetheless bit him hard enough to break his skin through the glove, causing the officer to "exclaim in pain." During the struggle, Vitasek grabbed Matthews's taser and tased the officer's arm. He continued actively resisting the assisting officers, trying to bite them too, but they overpowered him. And when Vitasek tried to escape from officers transporting him from the hospital to the jail the next

day, he violently resisted and again attempted to use his mouth as a weapon.[5] *See Boone v. Commonwealth*, 14 Va. App. 130, 133 (1992) (concluding that "'an intent to maim, disfigure[,] or kill may be presumed' when an attack is 'attended with . . . violence and brutality'" (second alteration in original) (quoting *Fletcher v. Commonwealth*, 209 Va. 636, 640-41 (1969))); *cf. Ramos v. Commonwealth*, 71 Va. App. 150, 162-63 (2019) (holding that, in the context of a brawl, a single blow can prove malice, a species of intent necessary to establish a malicious wounding).

Accordingly, the evidence was sufficient to prove that Vitasek inflicted the bite to Matthews's hand with at least the intent to permanently maim, disfigure, or disable him.[6]

### B. Possession of a Weapon by a Convicted Felon

Code § 18.2-308.2(A) makes it unlawful for any person previously convicted of a felony "to knowingly and intentionally possess or transport . . . any stun weapon."[7] Vitasek challenges

---

[5] Although Vitasek argues that the Commonwealth focused on a single bite as the basis for his malicious wounding conviction, the trier of fact was not required to view that bite in a vacuum. *See Burkeen*, 286 Va. at 260-61. It could, instead, consider the totality of the circumstances both leading up to the bite and after it in assessing whether Vitasek acted with the requisite intent to cause permanent injury. *See id.*; *see also Perkins*, 295 Va. at 329 n.3 (defining maiming, disfiguring, and disabling).

[6] The fact that Vitasek may have acted with an intent to escape does not preclude a finding that he also intended to permanently maim, disfigure, disable, or kill Matthews to do so. *See Moody v. Commonwealth*, 28 Va. App. 702, 708 (1998) (holding the evidence proved attempted malicious wounding where the defendant "plainly sought to flee the parking lot" by car but also "inten[ded] to run down" a pedestrian in his path), *cited with approval in Eberhardt*, 74 Va. App. at 38-39, *and Stevens v. Commonwealth*, 38 Va. App. 528, 536-37 (2002); *see also Fletcher v. Commonwealth*, 72 Va. App. 493, 508 (2020) (applying the principle that one intends the natural and probable consequences of his acts to conclude that the defendant, who hit the victim's windshield repeatedly with a tire iron in a road-rage incident, intended not only to shatter the window but also to strike the victim).

[7] That subsection incorporates the definition of stun weapon contained in Code § 18.2-308.1. It is undisputed here that Officer Matthews's taser met that definition.

the sufficiency of the evidence to prove both that he had adequate control of the officer's stun gun to constitute possession and that he intended to possess it.[8]

"The 'mischief' at which [the felon-in-possession statute] is directed is the possession of firearms[, stun weapons, or explosive material] by convicted felons in an attempt to prevent indiscriminate use of dangerous weapons by one previously convicted of a serious crime." *Alger v. Commonwealth*, 40 Va. App. 89, 93 (2003), *aff'd*, 267 Va. 255 (2004). "[T]o obtain a conviction for . . . [a] possessory offense[], the Commonwealth must produce evidence sufficient to allow a rational factfinder to conclude beyond a reasonable doubt that the defendant intentionally and consciously possessed the [item] with knowledge of its nature and character." *Garrick*, 303 Va. at 183.

Possession of contraband, such as an illegal drug or prohibited weapon, may be actual or constructive. *See id.*; *Grier v. Commonwealth*, 35 Va. App. 560, 570 (2001). Actual possession of an item is defined as "physical . . . control over [it]." *Brown v. Commonwealth*, 37 Va. App. 507, 521 (2002) (quoting *Possession*, *Black's Law Dictionary* (7th ed. 1999)), *quoted in Lucas v. Commonwealth*, 75 Va. App. 334, 346 (2022). This type of possession turns on "the existence of manual control over [the] object" such as its "being . . . in the hand of the accused." John L. Costello, *Virginia Criminal Law and Procedure* § 20.4 (4th ed. 2008). Of course, actual possession, like constructive possession, "may be exclusive or joint." *Woodfin v. Commonwealth*, 218 Va. 458, 460 (1977) (per curiam). And the "duration of possession [of a weapon] is immaterial" for purposes of this offense. *Grier*, 35 Va. App. at 570 (quoting *Gillis v. Commonwealth*, 215 Va. 298, 302 (1974)). Finally, it is important to note, whether an individual possessed an item and did so with the requisite intent are questions of fact. *Smallwood v.*

---

[8] The Commonwealth suggests that the intent portion of Vitasek's challenge is barred by Rule 5A:18. However, Vitasek preserved this challenge below by addressing it in conjunction with the other weapons charge—disarming an officer.

*Commonwealth*, 278 Va. 625, 631 (2009) (quoting *Ritter v. Commonwealth*, 210 Va. 732, 743 (1970)); *see Eberhardt*, 74 Va. App. at 39; *Collins v. Commonwealth*, 13 Va. App. 177, 178 (1991).

Vitasek purportedly concedes, in keeping with well-accepted legal principles, that possession need not be exclusive. Yet relying on *Smallwood*, 278 Va. at 631, he makes the somewhat contradictory argument that the Commonwealth was required to prove his "access . . . was not restricted in any way." (Emphasis omitted). He emphasizes that he never acquired "complete" control over the weapon before the officer discarded it and nothing proved he intended to do so. Vitasek argues, as a result, that the evidence was insufficient to prove the possession and intent elements of the offense. We disagree.

The decision in *Smallwood*, 278 Va. at 627-28, 631, involved constructive possession and therefore does not control where a defendant has actual possession, as Vitasek did. The Supreme Court has explained that although "[p]hysical possession [provid]ing . . . 'immediate and exclusive control' is *sufficient*[,] . . . the possession need not *always* be exclusive[, and t]he defendant may share it with one or more." *Ritter*, 210 Va. at 741 (emphases added). It has further recognized that two people may have joint possession of an item even "where the interests of the possessors are antagonistic." *See* Costello, *supra*, § 20.4[1] & n.44, [4] (citing *Ritter*, 210 Va. at 741, involving constructive possession of drugs in a family's mailbox, as an example).

Here, the evidence supported the finding that Vitasek gained actual possession of the taser, albeit briefly. Vitasek admitted during a phone call that he "took" an officer's taser during the fray. Matthews explained that while he held his taser in one hand and moved it toward Vitasek's stomach, Vitasek put both hands on the weapon and tried to wrest it away. The officer elaborated that Vitasek "gained [enough] control of [the] taser" that he was able to "turn[] it" and

"manipulate[] it back towards" the officer. Vitasek then pointed the stun gun at him and "hit [his] arm with it," causing Matthews to feel an electrical pulse. *See Canada v. Commonwealth*, 75 Va. App. 367, 388 (2022) (holding proof that a defendant fired a weapon can "support a finding that [he] possessed [it]"); *Armstrong v. Commonwealth*, 36 Va. App. 312, 318 (2001) (en banc) (holding that Code § 18.2-308.2 expresses a "legislative intent of keeping [weapons] out of the hands of convicted felons"), *aff'd*, 263 Va. 573, 579 (2002) (quoting this language).

This same evidence of Vitasek's actions and statements supported the conclusion that he possessed the taser intentionally and consciously within the meaning of the felon-in-possession statute. *See Perkins*, 295 Va. at 330 (permitting the fact finder to "infer that every person intends the natural, probable consequences of his or her actions" (quoting *Ellis v. Commonwealth*, 281 Va. 499, 507 (2011))); *see also* Model Penal Code § 2.01(4), 10A U.L.A. 92 (2001) (defining possession as "knowingly procur[ing]" an item or "[being] aware of [one's] control" long enough to "terminate possession"). The evidence proved that Vitasek had actual, albeit joint and brief, possession of the stun gun and wielded sufficient control to use the weapon to tase the officer. Particularly in light of the legislative goal of keeping dangerous weapons out of the hands of convicted felons, this evidence was sufficient to support a finding by the trier of fact that Vitasek acted with the requisite intent.

The evidence was sufficient to prove possession of a weapon by a convicted felon.

### C. Removal of Weapon or Deprivation of Use

Vitasek contests the sufficiency of the evidence to prove he "remov[ed]" Officer Matthews's stun gun or "depriv[ed him] of [it]."

Code § 18.2-57.02 provides that a defendant is guilty of a felony if he "knowingly and without . . . permission" *either* "removes [a stun] weapon from the possession of" a "law-enforcement officer . . . with the intent to impede or prevent [him] from performing [his] duties"

*or* "deprives the officer of the use of the weapon." The indictment against Vitasek for this offense charged him with violating the statute in the disjunctive—"knowingly and without [Matthews]'s permission remov[ing] the officer's . . . stun weapon[] *or depriv[ing] him of its use*." (Emphasis added).[9]

When interpreting a statute, the appellate court "must presume that the General Assembly chose, with care, the words that appear in [it] and must apply the statute in a manner faithful to that choice." *Jones v. Commonwealth*, 296 Va. 412, 415 (2018) (quoting *Johnson v. Commonwealth*, 292 Va. 738, 742 (2016)); *see Durham v. Commonwealth*, 303 Va. 310, 323 (2024) ("Th[e appellate c]ourt approaches every statute with the assumption that the 'legislature says what it means and means what it says.'" (quoting *In re Woodley*, 290 Va. 482, 491 (2015))). Consequently, if "the language of a statute is unambiguous, we are bound by [its] plain meaning." *Bland-Henderson v. Commonwealth*, 303 Va. 212, 218 (2024) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). "[T]he plain, obvious[,] and rational meaning of a statute is always to be preferred to any curious, narrow[,] or strained construction." *Commonwealth v. Canales*, 304 Va. 200, 214 (2025) (first alteration in original) (quoting *Commonwealth v. Delaune*, 302 Va. 644, 655 (2023)). And it is our "duty to interpret the several parts of a statute as a consistent and harmonious whole . . . to effectuate the legislative goal." *Ducharme v. Commonwealth*, 70 Va. App. 668, 677 (2019) (quoting *Colbert v. Commonwealth*, 47 Va. App. 390, 395 (2006)). Examining a statute in its entirety, "to ascertain the[] plain meaning" of specific "terms in context[,] . . . does not offend [the plain language] rule." *Chaffins v. Atl. Coast Pipeline, LLC*, 293 Va. 564, 568 (2017) (quoting *Eberhardt v. Fairfax Cnty. Emps.' Ret. Sys. Bd. of Trs.*, 283 Va. 190, 194 (2012)).

---

[9] On brief, Vitasek quotes the statute but uses an ellipsis to omit the "depriving the officer of the use" clause. *See* Code § 18.2-57.02. He also does not reference it in his analysis except when quoting the Commonwealth's argument.

As for the meaning to be given particular terms, "[u]nless the section provides an alternative definition, words in the Code are interpreted [using] their ordinary meaning." *Durham*, 303 Va. at 323. To determine the "ordinary meaning of everyday language, [courts] consult general-purpose dictionaries." *Tomlin v. Commonwealth*, 302 Va. 356, 372 (2023).

The plain meaning of Code § 18.2-57.02's proscription against "depriv[ing a law enforcement] officer of the use of" a stun weapon in the officer's possession is clear. To deprive means "to take something away from" or "to keep from the possession, enjoyment, or use of something." *Deprive*, *Webster's Third New International Dictionary of the English Language* (2002); *see Deprive*, *The American Heritage Dictionary of the English Language* (5th ed. 2011). By definition, then, a deprivation can apply to either possession or use. But the particular clause of the statute at issue here, the second one, expressly proscribes mere deprivation of *use*. Deprivation of possession is covered by the first clause of Code § 18.2-57.02 (proscribing removal) and is not required to prove a violation of the second clause. As such, we turn to the meaning of "use."

The verb "use" means "to put into action or service, avail oneself of, . . . to carry out a purpose or action by means of, utilize, . . . [or] act with regard to." *Smith v. Commonwealth*, 17 Va. App. 37, 39 (1993) (quoting *Use*, *Webster's New Collegiate Dictionary* (1977)); *see Walker v. Clements*, 216 Va. 562, 563 (1976) (defining "[t]he 'use' of a thing" as meaning "'to enjoy, hold, occupy, or have some manner of benefit thereof'" (quoting *Use*, *Black's Law Dictionary* (4th ed. 1951))).

By definition, then, the act of gaining sufficient control of a law enforcement officer's stun gun to tase the officer constitutes depriving the officer of the ability to use the weapon himself. The facts prove that, during the continuing struggle, while Vitasek had two hands on the weapon and tased Matthews with it, Matthews was unable "to put [the weapon back] into [his

own] action or service" or to "avail [him]self of" it as against Vitasek.[10] *See Smith*, 17 Va. App. at 39 (quoting *Use*, *Webster's New Collegiate Dictionary*, *supra*). This behavior constituted depriving Matthews of the use of the taser and proved a violation of Code § 18.2-57.02. The Commonwealth was simply not required to prove that Vitasek removed the weapon from the officer's possession. Definitionally, for the period of time during which Vitasek exercised greater control over the stun weapon than Officer Matthews and tased him in the arm, he was depriving Matthews of the ability to use the weapon against him.

As a result, the evidence was sufficient to support Vitasek's conviction for depriving a law enforcement officer of the use of his weapon.

## II. Length of Active Sentence in Light of Mitigating Evidence

Finally, Vitasek challenges the length of his active sentence. An appellate court applies an abuse-of-discretion standard to its review of a trial court's sentencing decision. *Cellucci v. Commonwealth*, 77 Va. App. 36, 45 (2023) (en banc). "This bell-shaped curve of reasonability governing . . . appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). A trial court abuses its discretion if it "fail[s] to consider a significant relevant factor, giv[es] significant weight to an irrelevant or improper factor, commit[s] a clear error of judgment, or mak[es] a mistake of law." *Cellucci*, 77 Va. App. at 46. Further, that court's related factual findings, including its credibility determinations, "are entitled to the traditional degree of appellate deference under an abuse-of-discretion standard." *Walker v. Commonwealth*, 78 Va. App. 52, 65 (2023). Only "when reasonable jurists could not differ" can we say that the trial court abused its discretion. *Commonwealth v. Swann*, 290 Va. 194, 197 (2015) (per curiam) (quoting *Grattan v.*

---

[10] Matthews had already tased Vitasek at least twice in the ongoing fray.

*Commonwealth*, 278 Va. 602, 620 (2009)). And "when a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du*, 292 Va. at 564 (quoting *Alston*, 274 Va. at 771-72).

Vitasek does not dispute that the sentences imposed were within the ranges set by the legislature. Instead, he challenges the court's deviation upward from the sentencing guidelines range. He also suggests based on the guidelines that "the average judge" would have given him a lower sentence. Code § 19.2-298.01(F) expressly provides, however, that a claim of failure to follow the guidelines "shall not be reviewable on appeal" or provide "the basis of any other post-conviction relief." *See Woodard v. Commonwealth*, 287 Va. 276, 281-82 (2014). Additionally, speculating about what the *average* judge would have done is irrelevant. Only if *no* reasonable jurist could have reached the conclusion of the trial judge can this Court conclude that the trial court abused its discretion. *See Swann*, 290 Va. at 197.

Vitasek's only cognizable argument on appeal is that the trial court failed to give proper consideration to his claim that mitigating circumstances compelled it to impose a lower sentence.[11] He suggests his statement that he approached his encounter with police with suicidal intent was a significant mitigating factor and the trial court should have weighed it more heavily against extensive incarceration. He also argues that he became a heroin user as a result of a prior incarceration and that returning him to "prison c[ould] aggravate [his] underlying personality issues," drug addiction, and suicidal ideation.

---

[11] Criminal defendants have constitutional and statutory rights to present mitigating evidence. *See Muhammad v. Commonwealth*, 269 Va. 451, 507 (2005) (constitutional right); *Commonwealth v. Shifflett*, 257 Va. 34, 44 & n.1 (1999) (statutory right under Code § 19.2-295.1).

The trial court, at sentencing, is charged with considering "various mitigating, extenuating, or even aggravating circumstances." *See Swain v. Commonwealth*, 28 Va. App. 555, 561 (1998). But "[t]he burden to *prove* mitigating circumstances falls on the defendant." *Cellucci*, 77 Va. App. at 49. Upon receiving that evidence, "[i]t is within the trial court's purview to weigh any mitigating factors presented." *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). Nevertheless, the requirement that a trial court *consider* mitigation evidence is not a requirement that the court find it *compelling* when weighed against other evidence. *See Cellucci*, 77 Va. App. at 52 & n.9. And "[b]arring clear evidence to the contrary, [an appellate court] will not presume that a trial court purposefully ignored mitigating factors in blind pursuit of a harsh sentence." *Sheets v. Commonwealth*, 80 Va. App. 706, 718-19 (2024) (second alteration in original) (quoting *Bassett v. Commonwealth*, 13 Va. App. 580, 584 (1992)).

The record, viewed through this legal lens, fails to show that Vitasek proved mitigating circumstances entitling him to a lower active sentence. First, he did not establish that he was suicidal at the time of his May 2023 crimes. Vitasek's father testified that Vitasek reported around 2018 or 2019 that "he wanted to die if he was arrested" again. Additionally, although Vitasek provided information for the presentence report and allocuted at the sentencing hearing, his statements were not made under penalty of perjury. *See Kearney v. Commonwealth*, 36 Va. App. 106, 109 n.1 (2001) (en banc) (allocution). Even as to the statements that were given under oath, the trial court remained free to assess their credibility. *See Barney*, 302 Va. at 97; *Cellucci*, 77 Va. App. at 46. And even if the court accepted Vitasek's claim that he wanted the police to kill him, it was not required to consider that fact as mitigating.

The court was also not required to accept Vitasek's claims that he had underlying mental health issues likely to be aggravated by a longer period of incarceration. Although Vitasek's father said he wondered if his son might be bipolar, Vitasek presented no evidence of such a

diagnosis or the likely impact of incarceration on his claimed condition. To the extent defense counsel argued that reincarceration would aggravate his drug problem, Vitasek himself said that he was on a five-day "meth[amphetamine] binge" at the time of his arrest, which belied his claim that going back to prison was likely to make his apparent drug problem any worse.

Finally, the trial court was required, as it did, to weigh the testimony of the police-officer victims against Vitasek's suggested mitigation in determining how to punish him for his crimes. *See Grattan*, 278 Va. at 618. Although Vitasek claimed he did not "inten[d to] hurt[] anyone [else]" and "fe[lt] terrible about [his] actions," he also characterized himself as "the [only] one who ha[d] to live with the consequences." Even after the officers testified about the lasting emotional impacts they suffered from Vitasek's violent acts, he minimized the harm to them and focused on himself. He claimed that their "lives w[ould] go back to normal[] or they'[d] have a new normal," whereas he would "be dealing with this . . . for the rest of [his] life." The court explicitly noted that it had "never seen an officer . . . [as] taken aback by an incident" as Matthews was. It further observed that Vitasek showed "literally no remorse" for what he had done. Additionally, the court noted inconsistencies in Vitasek's statements in the presentence report, causing it to disbelieve the statements entirely. Lastly, it emphasized that Vitasek's behavior in video calls he made from jail showed him "reveling in the interaction that he had with the police" instead of confirming that he had changed after arrest, and the court characterized that behavior as "chilling." Under these circumstances, the trial court's decision to sentence Vitasek to sixty-five years and thirty-six months with all but fourteen years suspended was not an abuse of discretion.

In short, the trial court sentenced Vitasek within the range of punishment authorized by the legislature. Nothing in the record establishes that the court overlooked or improperly

weighed his mitigating evidence.  On this record, the court's findings underlying the sentencing decision were neither plainly wrong nor without evidence to support them.

CONCLUSION

We hold that the evidence was sufficient to prove that Vitasek intended to permanently maim, disfigure, disable, or kill Officer Matthews as required to support his conviction for malicious wounding of a law enforcement officer.  The evidence also proved that he had actual possession of the officer's taser and intended to possess it, as required for his felon-in-possession conviction.  Further, the evidence established that he deprived Matthews of the use of the taser, as necessary to support his conviction for disarming an officer of his weapon.  Finally, the court did not abuse its discretion by imposing an active sentence above the guidelines range and, as such, implicitly concluding that Vitasek's alleged mitigation evidence did not entitle him to a lesser active sentence.  Consequently, the judgment of the trial court is affirmed.

*Affirmed.*